[No. 991-2.  Division Two.  January 3, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. ORVILLE DEWAYNE EPTON, *Appellant*.

*Leonard Workman* and *Springer & Norman*, for appellant.

*Henry R. Dunn, Prosecuting Attorney*, for respondent.

PEARSON, C.J.—Defendant, Orville DeWayne Epton, appeals from a judgment and sentence for the crimes of first-degree burglary, three counts of second-degree assault, and one count of robbery, following his conviction by a Cowlitz County jury. The three claimed errors on appeal involve evidentiary matters relating to the credibility of the state's two principal witnesses. We conclude that no prejudicial error occurred which prevented defendant from receiving a fair trial.

During the night of April 5, 1972, the residence of Dr. H. J. Laudan of Longview was burglarized by two assailants. During the course of the burglary, Dr. Laudan, his wife, and daughter were aroused from bed by the burglars, threatened at gunpoint, and robbed of money, jewelry and bonds, some items of which were taken from a concealed safe within the basement of the home. The three victims were left tied in a bedroom. The assailants wore stocking masks and were not identifiable by the victims. A third accomplice acted as a driver and lookout for the burglars.[1]

On May 7, 1972, Robert Stratton was arrested in Seattle when he attempted to sell some of the stolen bonds to a Seattle undercover policeman. He was brought back to the Cowlitz County jail, where he remained until he later pleaded guilty to one count of burglary in the first degree, one count of robbery and three counts of assault. He was then transferred to the state penitentiary at Walla Walla, where he remained until again transferred back to Cowlitz County to be a state's witness in the present case.

On May 8, 1972, Larry White was arrested in Cowlitz

---

[1] This accomplice was John Huntamer, who did not testify at defendant's trial.

County. He was immediately booked and placed in jail in Cowlitz County. He was tried and convicted before a Cowlitz County jury in the fall of 1972 for the same counts involved in Stratton's plea. After conviction, White was also sent to the penitentiary at Walla Walla and returned to the Cowlitz County jail for this trial. As will hereafter be explained, defendant was largely responsible for White's apprehension and testified against White as a witness for the state.

The state's theory against defendant was that he had helped White plan the burglary. This theory of guilt depended largely upon the testimony of White and Stratton, both of whom had long criminal records. However, the nature of the crime and the manner in which it was carried out strongly suggested that someone with an intimate knowledge of the physical layout of the Laudan residence and its contents and in particular the basement safe had supplied White with information beforehand. The Laudans testified that defendant was the only person outside the family with such intimate knowledge of the premises and its contents. This stemmed from a personal and business relationship of several years. White testified that defendant planned the burglary with him, drew a diagram of the premises, and told him there were jewels and a large amount of cash in a safe in the basement.

Defendant and White had for several months prior to the burglary been in close contact with one another. Defendant had hired White to manage several rental units which he owned. It was during the course of this relationship, according to White, that the burglary of the Laudan residence was planned.

Stratton, on the other hand, had never met defendant, but was brought into the plan by White. Stratton's testimony incriminating defendant was to the effect that he was concealed in a bedroom of White's apartment in January of 1972 and observed defendant enter the apartment and discuss plans for the contemplated burglary with White.

The principal assignment of error relates to the testi-

mony of Stratton's attorney, George Dixon, of Tacoma, Washington. Mr. Dixon was called as a witness during the state's case in chief. He was called for the purpose of rehabilitating Stratton, who had been vigorously impeached on cross-examination by defendant's counsel. The cross-examination of both Stratton and White had sought to establish that the two had recently fabricated defendant's involvement in order to avoid being tried on habitual criminal charges.[2] The cross-examination of both also sought to establish that White was "out to get" defendant because of the latter's involvement as a state's witness against White. This cross-examination was vigorous and effective in impeaching the credibility of both witnesses.

Mr. Dixon had been summoned to the Cowlitz County jail within 2 or 3 days after Stratton's arrest to discuss possible representation of Stratton on the criminal charges. During this counseling, Stratton admitted his own guilt to Dixon, named the two direct accomplices, and informed Dixon that defendant had "set up" the crime. He related to Dixon the circumstances of the January meeting between defendant and White in which he had personally but secretly overheard them discuss plans for burglarizing the Laudan residence. These statements were consistent with Stratton's testimony at the trial.[3] They were made, the state contends, during the attorney-client confidential relationship, at a time and under circumstances in which Stratton's motive to falsify was minimal.

Defendant objected to this testimony on two grounds. First, it is claimed that Dixon disregarded the court's cautionary instruction that he should not relate any statements Stratton had made to him which were not based upon Stratton's personal knowledge or observation. It is claimed that when Dixon testified that Stratton told him defendant

---

[2]The prosecuting attorney had used threat of habitual criminal charges against both Stratton and White, to obtain their cooperation in defendant's prosecution.

[3]Before allowing the testimony, the trial court properly instructed the jury that its purpose was restricted to the question of Stratton's credibility.

had "set up" the burglary, this necessarily was based upon information supplied to Stratton by White.

We find no prejudicial error in this testimony. While the question of who "set up" the crime is somewhat conclusionary and was properly stricken by the trial court on that ground, it was a reasonable conclusion in light of what Stratton had personally observed at the January meeting between defendant and White. It was no more damaging to defendant than was the fact of that incriminating meeting.

The second objection to Dixon's testimony was that the state should not have been entitled to rehabilitate Stratton by the use of prior consistent statements. The contention is that the requirements for this type of rehabilitation were not met under the rules enunciated in *Sweazey v. Valley Transport, Inc.,* 6 Wn.2d 324, 107 P.2d 567, 111 P.2d 1010, 140 A.L.R. 1, 20 (1940) and *State v. Murley,* 35 Wn.2d 233, 212 P.2d 801 (1949). We disagree with this contention.

The general rule is that the testimony of a witness cannot be supported by showing that he has made statements out of court similar to or in harmony with his in-court testimony. *Sweazey v. Valley Transport, Inc.,* and *State v. Murley, supra;* 75 A.L.R.2d 909 (1961).

There are several exceptions to this general rule, one of which we think is applicable to the facts of this case. Requirements for the "recent fabrication" exception appear in *State v. Murley, supra* at 238.

A witness' prior out-of-court statements consistent with his in-court testimony are admissible for the sole purpose of re-establishing the witness' credibility when: (1) his testimony has been assailed (2) under circumstances inferring [*sic*] recent fabrication of his testimony (3) when the prior out-of-court statements were made under circumstances minimizing the risk that the witness foresaw the legal consequences of his statements. [Citing cases.]

In accord is *State v. Haye,* 72 Wn.2d 461, 433 P.2d 884 (1967); *cf. State v. Pendleton,* 8 Wn. App. 573, 508 P.2d 179 (1973).

In applying these rules, the trial court must, as in many evidentiary rulings, exercise discretion as to the relevancy of the testimony offered. *Sweazey v. Valley Transport, Inc., supra.*

We do not find an abuse of discretion. Stratton's testimony had been vigorously assailed with implications of recent fabrication concerning the "deal" made with the prosecutor not to press habitual criminal charges. There was no conceivable reason for Stratton to falsify the facts concerning the January meeting between defendant and White, in the privacy of the attorney-client relationship and under the circumstances existing at the time.

At that stage, Stratton had not been offered a plea bargain by the prosecutor. In fact, Mr. Dixon testified that he had had no contact with the prosecutor's office prior to this discussion with Stratton. Under these circumstances, we think the risk was minimized that Stratton foresaw any legal consequences in relating this episode to his attorney.

It is contended that Stratton and White had ample opportunity during the 33 or 34 days prior to apprehension to plan the frameup of defendant. It is also contended that they may have planned to do it during the 2 days they were jailed together before Stratton talked with his attorney, or while confined together at Walla Walla.

Aside from the fact that these assertions are speculative, they do not in our view affect the admissibility of the evidence. We do not think application of subdivision 3 of the "recent fabrication" rule requires elimination of all risk of the foreseeability of the legal consequences of the prior out-of-court consistent statements. Such risk must, we think, only be minimized. It is on this very point that the trial court's discretion must be exercised in the interest of justice. We find no abuse of that discretion.

Closely related to this assignment of error was the allowance of testimony rehabilitating White. Deputy Sheriff Covington was allowed over objection to testify that he was present at the Cowlitz County jail on May 8, while White was being booked, and on that occasion the following oc-

curred: "I advised Mr. White we had other people in custody in connection with the crime and he asked me if I had Epton in custody."

Again, this evidence was offered during the state's case in chief, after White had been vigorously and effectively assailed on cross-examination. The thrust of White's impeachment was threefold: (1) that White and defendant had had a falling out prior to White's arrest; (2) that White wanted to get even with defendant for the latter's testimony against him; and (3) that White agreed to testify to avoid habitual criminal charges.

The latter two of these motives for "recent fabrication" occurred subsequent to the incident to which Covington testified, and were persuasive reasons for fabricating defendant's involvement.

We perceive there was some risk that from the moment of his arrest White intended to improve his bargaining position by setting about to implicate defendant. His professional criminal background suggests his capability in this regard. However, there is no testimony that at the time this statement was made White was aware that defendant would be involved in his prosecution. Also, at this point White was contesting the charges against him. It would have been in his interest to keep defendant out of the picture, assuming that defendant knew of any facts which would incriminate him.

The risk that White would foresee any legal benefit from implicating defendant was minimal at the time he was first jailed. It was after defendant testified against him, or under threat of habitual criminal prosecution, that a motive for fabrication arose.

We think application of the "recent fabrication" exception was within the trial court's discretion and was properly exercised under the circumstances of this case.

Lastly, one of the grounds urged in support of a new trial was newly discovered evidence. The potential witness was in jail with Stratton and White prior to and during defendant's trial and overheard them discussing their testimony.

The version overheard differed from testimony given by the two at the trial and consequently was intended to impeach Stratton and White.

We find no abuse of discretion in the refusal to grant a new trial on this ground. A new trial should not be granted for newly discovered evidence where such evidence would merely impeach or discredit evidence produced at the trial. *State v. Mesaros*, 62 Wn.2d 579, 384 P.2d 372 (1963); *State v. Gibson*, 75 Wn.2d 174, 449 P.2d 692 (1969).

Judgment affirmed.

PETRIE and ARMSTRONG, JJ., concur.

Petition for rehearing denied February 14, 1974.

Review denied by Supreme Court April 29, 1974.