[No. 15636–5–I. Division One. June 8, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. ERIN KIRSTEN STUBSJOEN, *Appellant.*

140

*Mark W. Muenster* and *Neil M. Fox* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Alfred W. Matthews, Deputy,* for respondent.

SCHOLFIELD, C.J.—Erin Kirsten Stubsjoen appeals her conviction for second degree kidnapping, challenging the sufficiency of the evidence, and assigning error to the exclusion of testimony of a defense witness and to the failure to instruct the jury on the definition of intent. We affirm.

## FACTS

Jerry Johnson, Donald Ponis, and Jeanna Bomber were socializing and drinking beer at Johnson's home during the early evening hours of June 11, 1984. They decided to visit Dash Point State Park. They took Jeanna Bomber's 6–month–old daughter, Holly, along with them. On the way, they stopped at a 7–Eleven store, where, according to their testimony, they met Stubsjoen for the first time. Johnson and Ponis invited Stubsjoen along to the park. Stubsjoen joined them, and they drank beer, smoked marijuana and talked in the park for 1 to 2 hours.

When the park was near closing, they drove to a grocery store for more beer and then to a cul de sac near 260th and 16th Avenue South. The cul de sac was surrounded by

sparse woods and underbrush. They sat in the car listening to the radio and drinking beer, Johnson and Stubsjoen in the front seat and Ponis and Bomber in the back seat with Bomber's baby. Not long after they arrived, Ponis and Bomber began to argue, and Johnson asked them to leave the car. They walked some distance away, out of sight of the car.

Johnson testified that, soon afterward, he left the car also, and walked behind some bushes nearby to urinate. He testified that when he returned to the car, Stubsjoen was gone, but it appeared the child was still in her car seat. Bomber and Ponis returned to the car a few minutes later, and the three of them drove to Bomber's house about 5 miles away. It was then that they discovered the baby was missing. According to the testimony, the baby's blankets had been arranged in the car seat to make it appear that the child was still there. They immediately returned to the cul de sac, but were unable to find Stubsjoen or the baby, so they contacted the police.

Stubsjoen testified that she was hitchhiking to Bellevue when she was picked up by Johnson, Ponis and Bomber. She told them she was going to Bellevue and that she was unfamiliar with the Federal Way area. Stubsjoen testified she agreed to go along to Dash Point, but with the understanding that afterward, she would be taken to the freeway where she could continue on her way.

After Ponis and Bomber left the car at the cul de sac, she said, the baby started crying loudly as if "gasping for air". She took the child into her lap to quiet her, but the baby continued to cry and began "spitting up" on her. At that point, she told the court, Johnson began to make sexual advances toward her. She rebuffed Johnson's advances and told him she wanted to leave, but she did not know where she was. Johnson refused to give her directions. Johnson also refused, she stated, to take the baby from her. Consequently, she got out of the car with the baby and proceeded down a footpath away from the cul de sac, calling loudly several times for Ponis and Bomber.

The path eventually led to 16th Avenue South, where a motorist stopped to offer assistance. The man drove her to a fire station in Des Moines. Officer Michael Chaney responded to the call from fire department personnel. Stubsjoen told Chaney her name was Lisa Chapman, that her car had broken down while she was visiting friends in the area, and that she wanted to go to Bellevue. Stubsjoen lied, she testified, because she was afraid the police would find out she was in violation of her parole for drinking and for not maintaining contact with her parole officer.

Officer Chaney arranged for the police department chaplain, Melvin Hinz, to drive Stubsjoen and the baby whom he assumed belonged to Stubsjoen, to Bellevue. Near the freeway exit to Bellevue, Hinz's pager sounded. When Hinz stopped to telephone back to the police station, Stubsjoen entered a taxicab with the baby and rode to a nearby establishment called Dave's Place eatery. On cross examination, Stubsjoen admitted that she took the taxi to get away from Hinz because she assumed the police were calling him about the missing baby.

Stubsjoen testified that, while she was at Dave's Place, she called a friend, Eric Jonsson, told him what had happened, and asked him for help. The police, who had traced the taxi to Dave's Place, arrested her a short time later.

At trial, Stubsjoen called Jonsson as a witness. However, the court only permitted him to testify that he had received the phone call, ruling that Stubsjoen statements were self-serving and that Jonsson's testimony would be inadmissible hearsay. Stubsjoen was convicted, under RCW 9A.40.030, of kidnapping in the second degree.

### SUFFICIENCY OF THE EVIDENCE

In a challenge to the sufficiency of the evidence in a criminal case, the test is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

RCW 9A.40.030 defines kidnapping in the second degree:

A person is guilty of kidnapping in the second degree if he intentionally abducts another person under circumstances not amounting to kidnapping in the first degree.

RCW 9A.40.010(2) defines "abduct":

"Abduct" means to restrain a person by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly force[.]

RCW 9A.40.010(1) defines "restrain":

"Restrain" means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his liberty. Restraint is "without consent" if it is accomplished by (a) physical force, intimidation, or deception, or (b) any means including acquiescence of the victim, if he is a child less than sixteen years old or an incompetent person and if the parent, guardian, or other person or institution having lawful control or custody of him has not acquiesced.

██ █ Statutes should be construed to avoid strained, unreasonable or illogical results. *Blondheim v. State,* 84 Wn.2d 874, 879, 529 P.2d 1096 (1975). RCW 9A.04.020(2) states:

The provisions of [the Washington Criminal Code] shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title.

RCW 9A.04.020(1) requires, moreover, that the provisions of the Washington Criminal Code be construed:

(a) To forbid and prevent conduct that inflicts or threatens substantial harm to individual or public interests;

Stubsjoen contends the evidence here was insufficient for conviction because the State did not prove she secreted or held the baby in a place where she was not likely to be found. She argues that virtually all of the time she had the child, they were in public areas where the child could easily be seen.

Responding to a similar argument to that at bar, the court in *State v. Missmer,* 72 Wn.2d 1022, 435 P.2d 638 (1967), *cert. denied,* 393 U.S. 885 (1968) was asked to construe the former kidnapping statute, RCW 9.52.010(2), which read in pertinent part:

Every person who shall wilfully,

. . .

(2) Lead, take, entice away or detain a child under the age of sixteen years with intent to conceal him from his . . . parents . . . shall be guilty of kidnaping in the second degree . . .

The defendant in *Missmer* enticed a 14–year–old girl into his automobile and drove around with her before being apprehended. Missmer argued that there was no evidence of concealment since it was not shown that the child was concealed from her parents because at all times he drove on main, well traveled thoroughfares in and around the area.

The court held, however, that the State need only prove that the defendant enticed away or detained the child with the intent to conceal her from her parents, and that "the girl could have been as well concealed from her parents in [the] defendant's automobile traveling along one of our high–speed freeways as she could have been in a deserted cabin in the country." *Missmer,* at 1026.

Likewise, a reasonable interpretation of the current kidnap statute, which is consistent with its purpose, is that a child is abducted when held in areas or under circumstances where it is unlikely those persons directly affected by the victim's disappearance will find the child. Here, such persons were the child's parents, legal guardian or custodian, and law enforcement officers. Stubsjoen in effect concealed the child by acting as though the child was her own.

To adopt Stubsjoen's narrow interpretation of the kidnapping statute would mean that a young child could be taken without the acquiescence of the child's parents or legal guardian, and so long as the child was held in public places and transported in public conveyances such as airlines and buses, there would be no kidnapping within the

meaning of the statute. Reasonable statutory interpretation forbids such strained and absurd results. It follows that the evidence here was sufficient to sustain Stubsjoen's conviction.

### EXCLUSION OF TESTIMONY OF ERIC JONSSON

Stubsjoen contends that the contents of her telephone conversation with Jonsson, which took place about 1½ hours after she removed the baby from the automobile, should have been admitted since it would have shown her state of mind. The trial court allowed testimony that there was a telephone call, but rejected evidence of the contents of the call, ruling that it was hearsay and self–serving.

■ The trial court's ruling was correct. While statements offered as circumstantial evidence of the declarant's state of mind are not hearsay, such statements must be relevant to be admissible. 5A K. Tegland, Wash. Prac. § 336 (2d ed. 1982). Jonsson's testimony would only have been relevant insofar as it might have corroborated Stubsjoen's contention that she did not intend to abduct the baby. However, the relevant state of mind was when she left the car with the baby in Federal Way, not her state of mind 1½ hours later when she was speaking on the telephone to Jonsson.

■ A statement is also deemed not to be hearsay if the declarant testifies at trial, is subject to cross examination concerning the statement, and the statement is consistent with her testimony and is offered to rebut an express or implied charge against her of a recent fabrication. ER 801(d)(1). However, the prior consistent statement must have been made before a motive to falsify has arisen. *See State v. Epton,* 10 Wn. App. 373, 376, 518 P.2d 229 (1974); *State v. Bray,* 23 Wn. App. 117, 594 P.2d 1363 (1979).

In the case at bar, Stubsjoen admitted that she fled from Chaplain Hinz because she believed the police were contacting him about the missing child. She also admitted that she knew the police could trace her to Dave's Place through the taxi company's dispatcher. Therefore, the statements at

issue were made after Stubsjoen had a motive to fabricate an explanation for her conduct, and consequently, were not admissible as prior consistent statements.

Moreover, Stubsjoen's statements to Jonsson would only be relevant if they were true. Therefore, Jonsson's proffered testimony regarding Stubsjoen's out–of–court declaration was hearsay since it was offered for the truth of the matter asserted. Although a hearsay statement might be admissible as "[a] statement of the declarant's then existing state of mind," under ER 803(a)(3), again, Stubsjoen's state of mind at the time she telephoned Jonsson was not the relevant issue at trial.

Finally, out–of–court admissions of a party are not admissible as an exception to the hearsay rule when they are self–serving. *State v. Huff*, 3 Wn. App. 632, 636, 477 P.2d 22 (1970); ER 801(d)(2). Without question, the statements at issue here were self–serving. Stubsjoen was offering an explanation for her conduct other than the intent to kidnap the child.

The decision whether to admit or refuse evidence is within the sound discretion of the trial court and will not be reversed in the absence of manifest abuse. *State v. Laureano*, 101 Wn.2d 745, 764, 682 P.2d 889 (1984). The trial court did not abuse its discretion by refusing to admit Jonsson's testimony.

FAILURE TO INSTRUCT ON DEFINITION OF INTENT

In a supplemental brief, Stubsjoen asserts for the first time that the trial court erred in failing to give the jury a definition of intent. Stubsjoen did not propose such an instruction in the trial court and did not except to the court's failure to give one. She argues, however, that the court's failure to instruct the jury on the statutory definition of intent relieved the State of its burden to prove every element of the offense beyond a reasonable doubt, and therefore, the error was constitutional and can be raised for the first time on appeal.

An instruction defining intent must be given when the

defendant requests it, *State v. Allen,* 101 Wn.2d 355, 361–62, 678 P.2d 798 (1984), and one court has stated in dicta that "it would be constitutional error to fail to define intent", which would allow a defendant to raise the issue for the first time on appeal. *State v. Boot,* 40 Wn. App. 215, 218, 697 P.2d 1034 (1985). However, even assuming the trial court's omission of an intent instruction in this case was constitutional error, we hold the issue cannot be raised before this court for the first time.

 As a general rule, the appellate court will not review any claim of error which was not raised in the trial court. *Smith v. Shannon,* 100 Wn.2d 26, 666 P.2d 351 (1983). Although a party may raise on appeal for the first time a "manifest error affecting a constitutional right" under RAP 2.5(a)(3), this does not mean that any constitutional error not argued below will be reviewed by this court. However, this limited exception is often misconstrued, and we find the court's comments in *State v. Valladares,* 31 Wn. App. 63, 639 P.2d 813 (1982) to be instructive:

> First, it should be understood that RAP 2.5(a)(3) in no way affects the discretion of this court to refuse review of issues not raised below. The rule merely enunciates our long–standing practice of addressing error where justice clearly demands we do so. This discretion will generally be exercised in favor of review when there exists "manifest error affecting a constitutional right." . . . RAP 2.5(a)(3) may not be invoked merely because defendant can identify a constitutional issue not litigated below.

(Citations omitted.) *Valladares,* at 75–76.[1]

Thus, "absent obvious and manifest injustice, we will not review assignments of error based upon the giving or refusal of instructions to which no timely exceptions were taken." (Footnote omitted.) *State v. Louie,* 68 Wn.2d 304, 312, 413 P.2d 7 (1966), *cert. denied,* 386 U.S. 1042 (1967). Imposing the requirements of this procedural rule does not violate a defendant's constitutional rights, especially where

---

[1]The Court of Appeals was reversed in part and affirmed in part in *State v. Valladares,* 99 Wn.2d 663, 664 P.2d 508 (1983), but that portion of the opinion we rely on here was not disturbed by the Supreme Court.

it does not appear that an accused is thereby deprived of a fair trial. *State v. Louie, supra.*

In *Louie,* a defendant convicted of burglary assigned error on appeal for the first time to the court's "to convict" instruction. The jury in that case had been instructed that it must find the defendant "did break and enter a building known as Roy's Enco Service . . ." *Louie,* at 310. The defendant claimed that, since the foregoing was not qualified by the phrase "'wherein property is kept for use, sale or deposit", the instruction erroneously omitted an essential ingredient of the statutory offense of burglary, and the State was thereby relieved of proving an element of the crime. *Louie,* at 311.

The court, however, held that, because of the evidence presented at trial, this facet of the charge was no more than an unquestioned, undisputed, and uncontroverted peripheral issue. To elevate the defendant's challenge to the instruction into the constitutional realm, the court stated, "would exalt form over substance and virtually abolish the requirement that a party timely except to an instruction he believes to be erroneous." *Louie,* at 315.

Similarly, in *State v. Saunders,* 30 Wn. App. 919, 639 P.2d 222 (1982), the defendant claimed on appeal for the first time that the court erred by giving an instruction on self–defense which set out an objective rather than a subjective standard for determining whether the defendant had reasonable grounds to believe he was in danger. The court held that this deficiency in the self–defense instruction could not be raised for the first time on appeal; the evidence and arguments at trial centered around who initiated the assault, and there was no question raised at any time whether either the defendant or the complaining witness was justified in believing he was in danger of serious bodily harm. *Saunders,* at 921–22.

In the instant case, the trial court instructed the jury, in part, as follows:

> A person commits the crime of kidnapping in the second degree when he or she intentionally abducts another person.

Instruction 5.

to convict the defendant Erin Kirsten Stubsjoen of the crime of kidnapping in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That during a period of time intervening from June 11, 1984 to June 12, 1984, the defendant intentionally abducted another person;

(2) That the defendant restrained that person by secreting or holding the person in a place where that person was not likely to be found; . . .

Instruction 6, in part.

Abduct means to restrain a person by secreting or holding the person in a place where that person is not likely to be found. Restraint means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with that person's liberty. Restraint is without consent if it is accomplished by physical force, intimidation or deception or any means including acquiescence, if the victim is a child less than 16 years old and if the parent or other person or institution having lawful control or custody of the victim has not acquiesced.

Instruction 7.

Each time the word "intentionally" was used, it appeared in conjunction with the word "abducts" or "abducted". "Abduct" was correctly defined in instruction 7. This left no mystery or room for misunderstanding as to what was meant by "intentionally abducts." Persons of ordinary knowledge and intelligence would know it meant to purposefully abduct. It would have added nothing to the jury's knowledge to have told them that to intentionally abduct meant to do so on purpose, or that an abduction must be the ultimate contemplated or intended objective.[2]

Stubsjoen maintains she did not intend to abduct the Bomber baby, but actually intended to take the child to the police in Bellevue. She admits, however, that she intention-

---

[2] WPIC 10.01 provides:

"A person acts with intent or intentionally when acting with the objective or purpose to accomplish a result which constitutes a crime."

ally took the baby from the car in Federal Way, accepted a ride to a fire station in a private vehicle, concealed her identity from the police, allowed police and fire officials to assume she was the child's mother, and later attempted to elude the police in Bellevue by leaving Chaplain Hinz's vehicle and entering a taxicab. Thus, there was no issue whether Stubsjoen acted purposefully. The only question the jury was left to resolve was whether Stubsjoen, by her intentional conduct, accomplished a result which constituted an abduction. Stubsjoen's alleged subjective motivations for her conduct were not relevant to that question. The verdict establishes that the jury found beyond a reasonable doubt that there had been an intentional abduction.

In short, Stubsjoen does not present us with any rational basis for concluding that the jury could have misunderstood the meaning of "intentionally abducts". Therefore, even assuming arguendo that it was constitutional error not to instruct the jury on the definition of intent, under the circumstances of this case, there was no "manifest constitutional error" which would entitle Stubsjoen to raise this issue for the first time on appeal. For the same reasons, moreover, any error in the failure to give the definitional instruction was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 22, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967); *State v. Evans,* 96 Wn.2d 1, 4, 633 P.2d 83 (1981).

Judgment affirmed.

WILLIAMS and GROSSE, JJ., concur.

Review denied by Supreme Court September 1, 1987.