[No. 24899-5-I.  Division One.  May 13, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. JANICE
ANN JOHNSON, *Appellant*.

*Michael N. Rosen*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Jeanette M. Dalton, Deputy*, for respondent.

SCHOLFIELD, J.—Janice Ann Johnson appeals her conviction on three counts of permitting prostitution, RCW 9A.88.090. We affirm her conviction on count 2 and reverse and remand for a new trial on counts 3 and 4.[1]

## FACTS

On June 3, 1988, a prostitute named Cheryl Love introduced plainclothes Detective Leanne Shirey to the defendant, Janice Johnson, while Johnson was working at the front desk of the Panama Hotel. Johnson, aware of the fact that Love was a prostitute, agreed to let Shirey work out of the hotel as long as Shirey was "cool".

At approximately 11 a.m. on June 15, Shirey came to the hotel with Detective Lam, the two posing as prostitute and "john". Johnson agreed to rent them a room for $10 despite the posted "No Vacancy" sign. Johnson took Shirey and Lam to room 116, let them in, and did not leave a key. Shirey returned to the hotel at 1 p.m. that day, this time with Officer Whidbey posing as her customer. Johnson once again rented room 116 to the pair and did not leave a key. At 5 p.m., Shirey returned for a third time with another decoy "john", Detective Benson. As Johnson escorted them to their room, Benson asked Shirey, in Johnson's presence, if the $10 paid for the room came out of "what I'm paying you." After letting Benson into the room, Johnson spoke to Shirey in the hallway, expressing her concerns that Benson was a "cop". Shirey assured Johnson that Benson was "cool".[2]

---

[1]Johnson was acquitted on count 1 of the information, which charged her with one count of promoting prostitution under RCW 9A.88.080. At issue in this appeal are her convictions on three counts of permitting prostitution, counts 2 through 4.

[2]During this discussion, Johnson also expressed her concern to Shirey that a person standing outside the hotel might be a police officer. After concluding that he was, Johnson told Shirey to be quick with her customer and offered assistance in getting Shirey out of the building without being seen by the "cop". Johnson later indicated to Shirey that she was upset because she thought that a prostitute had put the police on to her. She told Shirey, "Now don't tell anyone I did this. You'd just be slitting your own throat. I don't know why these girls want to say anything if they have a safe place to come."

On June 21, 1988, Shirey again arrived at the hotel with another decoy "john". As previously, the room was rented to the pair for $10, and they were given no key.

On June 22, 1988, Shirey arrived with Officer Manning as her decoy customer. This time the pair stayed in the rented room for about 20 minutes, during which time Shirey placed rope burns on her neck and had Manning bruise her forearms. A few minutes after Manning left, Shirey went to the front desk and showed her wounds to Johnson, asking that the "john's" name be taken off the hotel registration card so she could report him to the Green River Task Force. Johnson complied, but insisted that Shirey not disclose where the incident had occurred, and questioned Shirey as to whether she would tell authorities that she was a prostitute. Later that day, Shirey returned to the hotel with Detective Everette posing as her "john".

On July 8, 1988, Shirey came to the hotel with Detective Neal, a plainclothes vice officer whom Johnson knew. Johnson greeted the pair, stating, "Hello, Detective Neal." Neal then "arrested" Shirey and accused Johnson of renting rooms to prostitutes. Johnson claimed that she was trying to stop the prostitution and expressed a willingness to work with Neal.

Johnson was arrested on July 20 and subsequently charged with one count of promoting prostitution[3] and three counts of permitting prostitution.[4] The three counts of permitting prostitution were alleged to have occurred on June 15, 21, and 22, 1988.

---

[3] RCW 9A.88.080(1)(b) provides as follows:
"(1) A person is guilty of promoting prostitution in the second degree if he knowingly:
". . .
"(b) Advances prostitution."

[4] RCW 9A.88.090(1) provides as follows:
"(1) A person is guilty of permitting prostitution if, having possession or control of premises which he knows are being used for prostitution purposes, he fails without lawful excuse to make reasonable effort to halt or abate such use."

Johnson filed a pretrial motion to dismiss the permitting prostitution charges, counts 2 through 4. The parties agreed that on the three dates in question, June 15, 21, and 22, there had been no offer or agreement to engage in sexual conduct for a fee. Johnson contended that for the offense of permitting prostitution to be committed, the premises must actually be used for prostitution on the dates in question.

The trial court denied Johnson's motion to dismiss. The court ruled that it is possible to "know" something which has not occurred, inasmuch as knowledge is defined as having information which would lead a reasonable person in the same situation to believe that certain facts exist, which facts are described by statute as constituting an offense. In such a case, the court concluded that it was possible for a reasonable person in Johnson's situation to believe that Shirey was committing acts of prostitution on the days in question, and that under the provisions of RCW 9A.88.090, an affirmative obligation would arise to abate the acts of prostitution.

At trial, Johnson sought to have an acquaintance, Jim Marcelle, testify regarding statements she purportedly made to him during the course of the police undercover operation. At a Democratic precinct committee meeting on June 16, 1988, Johnson had purportedly told Marcelle, "I may be crazy, but I think that there is a female undercover police officer acting as a prostitute who is working out of my hotel". Defense counsel argued that such testimony would go to Johnson's subjective state of mind on the issue of knowledge, which is an element of the crime of permitting prostitution. The court refused the testimony, concluding that Johnson's statement on June 16, 1988, was too remote to show her state of mind on the day before, June 15, or the later date of June 21.

Johnson was acquitted on the promoting prostitution charge but was found guilty on the three counts of permitting prostitution. This appeal followed.

## PERMITTING PROSTITUTION

The crime of permitting prostitution is defined under RCW 9A.88.090 as follows:

(1) A person is guilty of permitting prostitution if, having possession or control of premises which he knows are being used for prostitution purposes, he fails without lawful excuse to make reasonable effort to halt or abate such use.

(2) Permitting prostitution is a misdemeanor.

The offense of prostitution is committed where a "person engages or agrees or offers to engage in sexual conduct with another person in return for a fee." RCW 9A.88.030. Johnson contends that she cannot be convicted for the crime of permitting prostitution here because the underlying activity she was charged with—permitting prostitution—did not in fact occur.

In *People v. Behncke,* 141 Misc. 2d 630, 534 N.Y.S.2d 79 (1988), the defendant was charged under a permitting prostitution statute that is identical to RCW 9A.88.090.[5] In *Behncke,* both the "prostitute" and her "customer" were undercover police officers. *Behncke,* 534 N.Y.S.2d at 80. The court concluded that, under such circumstances, there could be no actual agreement, offer, or understanding between the two to engage in sexual conduct for a fee, and therefore, neither prostitution nor permitting prostitution could have occurred. *Behncke,* 534 N.Y.S.2d at 81.

■ The *Behncke* court's reasoning is based on the assumption that an actual act of prostitution must occur before a defendant can be convicted for permitting prostitution. New York law does not permit a jury to infer that a defendant has knowledge of criminal activity where he has information that would lead a reasonable person to *believe*

---

[5]The New York statute, Penal Law § 230.40, defines permitting prostitution as follows: "'A person is guilty of permitting prostitution when, having possession or control of premises which he knows are being used for prostitution purposes, he fails to make reasonable effort to halt or abate such use.'" *Behncke,* at 631.

that facts exist which constitute a crime.[6] Under Washington law, however, a jury is permitted, but not required, to draw such an inference. *State v. Leech,* 114 Wn.2d 700, 710, 790 P.2d 160 (1990) (construing WPIC 10.02). Therefore, the question here is whether Johnson had information that would lead a reasonable person to *believe* that her premises were being used for prostitution purposes. The jury in this case was given the following definition of "knowledge":

> A person knows or acts knowingly or with knowledge when he or she is aware of a fact, facts or circumstances or result described by law as being a crime.
>
> If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are described by law as being a crime, the jury is permitted but not required to find that he or she acted with knowledge.

Instruction 11. This instruction follows the language of RCW 9A.08.010(1)(b)(ii) and WPIC 10.02 and was specifically approved in *State v. Leech, supra.*

In this case, Johnson clearly had information which would lead a reasonable person in her situation to believe that prostitution was occurring on her premises. On June 15, 1988, Shirey and her "johns" rented rooms from Johnson on three separate occasions, paying $10 each time, and were never given a key. Concerned over possible police surveillance, Johnson asked that Shirey be "quick" with her customers and offered to assist Shirey in departing afterward. Shirey followed the same procedure in renting rooms from Johnson on June 21 and 22, and on the latter date even requested Johnson's assistance in reporting an abusive

---

[6]Under New York law, the mental element of "knowingly" is defined by Penal Law § 15.05(2) as follows: "'A person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is *aware* that his conduct is of such nature or that such circumstance exist[s]." (Italics ours.) *People v. Martes,* 140 Misc. 2d 1034, 1038, 532 N.Y.S.2d 469, 472 (1988). This definition differs from Washington law in that under the definition of "knowingly" provided in WPIC 10.02 and RCW 9A.08.010(1)(b)(ii), the jury is permitted, but not required, to find that a person acted with knowledge if such person had information that would lead a "reasonable man in the same situation to *believe* that facts exist which facts are described by a statute defining an offense." (Italics ours.) RCW 9A.08.010(1)(b)(ii), in part.

"john" to the police. At that time, Johnson expressed concern over whether Shirey would tell authorities that she was a prostitute and insisted that Shirey not disclose where the incident occurred.

The gravamen of the offense of permitting prostitution is knowledge that premises are being used for prostitution purposes and the failure to take reasonable steps to abate such use. *See* RCW 9A.88.090. The jury in this case properly concluded that Johnson had such knowledge because, given the information available to Johnson, a reasonable person in her position would have concluded that prostitution was occurring on her premises. Johnson took no steps to halt or abate the activity, and in fact encouraged it. The existence of an actual act of prostitution is not an element of the offense.

### TESTIMONY OF JIM MARCELLE

At trial, the defense sought to admit the testimony of Jim Marcelle, an acquaintance of Johnson, regarding a statement Johnson had purportedly made to him during the course of the police undercover investigation. Johnson argued that the testimony would go to her subjective state of mind on the question of the "knowledge" element of permitting prostitution. The court refused the testimony on the grounds that Johnson's state of mind on June 16, 1988, was too remote to show her state of mind on the day before, June 15, or the later date of June 21. Johnson contends that the trial court's exclusion of Marcelle's testimony was error.

Johnson's statement to Marcelle was not hearsay because it was offered only as circumstantial evidence of her state of mind. *See State v. Stubsjoen,* 48 Wn. App. 139, 146, 738 P.2d 306, *review denied,* 108 Wn.2d 1033 (1987); 5B K. Tegland, Wash. Prac. § 336 (3d ed. 1989). It is well established that out–of–court statements offered to show the defendant's state of mind are admissible so long as they are relevant. *State v. Hamilton,* 58 Wn. App. 229, 232, 792

P.2d 176 (1990); *Stubsjoen,* at 146 (statement must be relevant).

■ Because the incidents giving rise to count 2 occurred on June 15 and Johnson did not make her purported statement until the next day, there was no error in the trial court's exclusion of Marcelle's testimony insofar as count 2 is concerned. The relevant issue was Johnson's state of mind on June 15, and her statement of June 16 was not probative on that issue where no evidence indicated that she had the same state of mind on the earlier date. *See Stubsjoen,* at 146 (defendant's statement made 1½ hours after abducting baby irrelevant to state of mind at time of abduction).

However, we conclude that the trial court erred in excluding the testimony with respect to counts 3 and 4. Johnson's purported statement to Marcelle occurred on June 16, and the events giving rise to counts 3 and 4 occurred less than 1 week later, on June 21 and 22, respectively. We do not believe that her statement was so remote in time from these events to warrant exclusion. The evidence was offered not for its truth, but rather, to demonstrate Johnson's belief that Shirey was an undercover police officer posing as a prostitute. As such, the evidence related to Johnson's state of mind and was directly relevant to her knowledge that her premises were being used for prostitution purposes on June 21 and 22. It was error for the trial court to exclude the evidence.

Johnson's conviction on count 2 is affirmed and her convictions on counts 3 and 4 are reversed and remanded for a new trial.

Judgment affirmed in part and reversed in part.

GROSSE, C.J., and PEKELIS, J., concur.