**FILED**
**MAY 6, 2021**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  37217-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEENAN T. SEYMOUR, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, A.C.J. — Keenan Seymour challenges a conviction for second degree

kidnapping on evidence sufficiency grounds.  He challenges his convictions for a

different second degree kidnapping and felony harassment, which he contends constitute

double jeopardy or merge.  He also challenges the trial court's denial of his motion for

access to a redacted copy of the discovery produced in his prosecution by the State.

No. 37217-1-III
*State v. Seymour*

The challenge to denial of the motion for a copy of the redacted discovery is not before us on appeal. We reject his remaining challenges and affirm.

FACTS AND PROCEDURAL BACKGROUND

Hailey Forney was in a new relationship with Keenan Seymour when she called him on the morning of Labor Day 2019 and invited him to come to her home and hang out with her and her son, 2-year-old L.L.[1] When Mr. Seymour told her he had been drinking, she told him "never mind"; not to come over. Report of Proceedings (RP) at 448.

He came to her home anyway at around 11 a.m., with a male friend. The two brought alcohol with them and continued drinking. Ms. Forney characterized Mr. Seymour as drunk. Not wanting to be around them, Ms. Forney told them she was going to take them home.

Ms. Forney took L.L. out to her car and put him in his car seat. Mr. Seymour's friend (Ms. Forney did not learn his name) got into the back seat with L.L. Ms. Forney got in the driver's seat and started the car while Mr. Seymour lingered outside. She accused him of being rude, told him she did not know why he had come over, and said he

---

[1] Initials are used to protect L.L.'s identity, consistent with a general order of this court. *See* General Order of Division III, *In re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App. June 18, 2012), https//www.courts.wa .gov/appellate_trial_courts/?fa=atc.genorders & div=III.

2

could walk home. He became angry that she would take his friend home, but not him. She told him to get in the car.

She was sitting with the driver's door open when Mr. Seymour reached in, grabbed her keys, and threw them through the interior of the car toward the back window, breaking it. Pieces of glass flew into the back seat and onto L.L. Mr. Seymour then pulled Ms. Forney out of the car and began hitting her. He ordered her to go into her home where he continued to strike her on her head and face.

Thinking it might be a way to get away, she told him she had tip money in her room and asked if she could get it, so they could get the car window repaired, which she would pay for. She assured him she was not going to tell anyone about what he had done. He let her get the tip money but followed her, and then ordered her back out to the passenger's seat of the car. He took the driver's seat and began driving.

As they drove around, Ms. Forney persuaded Mr. Seymour that they should try to find a place that would repair the window. They stopped at Les Schwab, which was not open, and at Walmart, where they were told by an auto center employee that it did not do window repair. As he drove, Mr. Seymour told Ms. Forney that he knew she was going to snitch, so he was going to kill her and leave her in the woods. She described him as driving recklessly, and he told her that if signaled to pull over by police, he would not stop. He pulled into the parking lot of a fast food restaurant at one point to smoke, and made her stand outside the car with him. When the car got low on gas, they stopped at a

gas station where she got out to pump the gas. She did not believe she could call out for help, because she feared Mr. Seymour would drive off with L.L. in the car. She feared his threats were serious, knowing from photographs she had seen that he had a gun.

She repeatedly asked him to let her and L.L. go, and he repeatedly refused. She asked if he would at least let her take L.L. to one of her parent's homes, to which he responded, "No. Don't worry about it. Don't worry about your son." RP at 474.

Eventually, he drove to where he and his friend were living, and his friend got out. Mr. Seymour remained in the car, expressing concern that Ms. Forney was going to snitch. They talked for about 30 minutes, with her expressing empathy and trying to reassure him that he should go inside, she would not snitch, and everything would be all right. She finally persuaded him to get out of the car and he went inside.

After Mr. Seymour went inside, and immediately after getting on the road, Ms. Forney called her stepfather, who told her to call 911. She did, and stopped at a location recommended by the dispatch operator where responding police officers contacted her and she provided a statement.

Mr. Seymour was charged with first degree kidnapping, felony harassment (threat to kill) and fourth degree assault of Ms. Forney. He was charged with second degree

4

kidnapping of L.L.  The State alleged several aggravating circumstances and that the

crimes against Ms. Forney were domestic violence crimes.[2]

About a month after being charged, Mr. Seymour moved for an order allowing

him, personally, to be given a redacted copy of the discovery produced by the State.  The

State opposed the motion, arguing there was a substantial risk of physical harm,

intimidation, bribery, witness tampering, retaliation, and unnecessary annoyance.  It cited

Mr. Seymour's significant criminal history, much of it violent, and the fact that Mr.

Seymour had already tampered with one witness in the case.  The court denied Mr.

Seymour's motion.

Mr. Seymour proceeded to a two-day jury trial.  The State played a recording of

Ms. Forney's 911 call, which the authenticating 911 operator testified was received at

1:41 p.m.  It called as witnesses police officers who had responded to the 911 call and

others who executed a search warrant on Mr. Seymour's home in which a black handgun

was recovered.  It also called witnesses from Walmart and Les Schwab who authenticated

surveillance videotape that was played for the jury.

Ms. Forney testified consistent with the facts described above.  In addition, she

estimated that "from beginning to end," Mr. Seymour threatened to kill her 20 to 30

---

[2] The State also charged Mr. Seymour with tampering with a witness (his roommate) but later voluntarily dismissed the charge, concerned about the technical difficulty in presenting the redacted recording of a phone call that was its evidence.

times.  RP at 487.  She estimated that she asked him to let her and L.L. go 50 times.  She acknowledged when cross-examined that Mr. Seymour and his friend never tried to remove L.L. from his car seat and Mr. Seymour never threatened L.L.  She also admitted that she never saw a weapon, and that she was not physically restrained.  But she testified that she was prevented from leaving because L.L. was in the car.

Mr. Seymour did not call any witnesses.

The jury found Mr. Seymour not guilty of first degree kidnapping of Ms. Forney but guilty of second degree kidnapping.  It made special findings of the domestic violence and aggravated domestic violence charged in connection with that count.  It found him guilty of second degree kidnapping of L.L. and of harassment (threat to kill) Ms. Forney, with a special finding of aggravated domestic violence.  It found him guilty of fourth degree assault of Ms. Forney.

Mr. Seymour appeals.

ANALYSIS

Mr. Seymour argues on appeal that (1) insufficient evidence supports his conviction for the second degree kidnapping of L.L., (2) convictions for both the second degree kidnapping and felony harassment of Ms. Forney constitute double jeopardy, and (3) the court erred when it denied Mr. Seymour's request for a redacted copy of discovery.

We can dispose of the discovery issue summarily. Mr. Seymour filed a timely notice of appeal of his judgment and sentence "and every part thereof." Clerk's Papers at 205. "A notice of appeal must 'designate the decision or part of decision which the party wants reviewed.'" *Anaya Gomez v. Sauerwein*, 172 Wn. App. 370, 376, 289 P.3d 755 (2012) (quoting RAP 5.3(a)(3)), *aff'd*, 180 Wn.2d 610, 331 P.3d 19 (2014). "However, we review an order or ruling not designated in the notice if it 'prejudicially affects the decision designated in the notice' and 'is made[ ] before the appellate court accepts review.'" *Id.* (alteration in original) (quoting RAP 2.4(b)). "An order 'prejudicially affects' the decision designated in the notice of appeal where its designated decision would not have occurred in the absence of the undesignated ruling or order." *Id.* at 376-77 (citing *Right-Price Recreation, LLC v. Connells Prairie Cmty. Council*, 146 Wn.2d 370, 380, 46 P.3d 789 (2002)).

Mr. Seymour does not demonstrate that the denial of his motion for access to redacted discovery had the required prejudicial effect on his judgment and sentence. The issue is not within the scope of the appeal.

We address the two remaining assignments of error in turn.

I.     SUFFICIENT EVIDENCE SUPPORTS THE CONVICTION FOR KIDNAPPING L.L.

Mr. Seymour argues that insufficient evidence supports his conviction for the second degree kidnapping of L.L. "A person is guilty of kidnapping in the second degree if he or she intentionally abducts another person under circumstances not amounting to

7

kidnapping in the first degree." RCW 9A.40.030. "'Abduct' means to restrain a person by either (a) secreting or holding him or her in a place where he or she is not likely to be found, or (b) using or threatening to use deadly force." RCW 9A.40.010(1). "'Restrain' means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty." RCW 9A.40.010(6) The State's third amended information and the trial court's instructions charged both means of abduction.

Mr. Seymour argues that the State's evidence did not establish that he secreted or held L.L. in a place where he was not likely to be found, because his alleged statements and actions reveal he intended that L.L. remain with his mother, and a child is abducted "when held in areas or under circumstances where it is unlikely those persons directly affected by the victim's disappearance will find the child." *State v. Stubsjoen*, 48 Wn. App. 139, 145, 738 P.2d 306 (1987). He argues that Ms. Forney was just such a "directly affected" person, and she was with L.L. the entire time.

He argues that there was no evidence that he ever threatened L.L. verbally or physically—to the contrary, he told Ms. Forney not to worry about L.L.

Evidence is sufficient if, after viewing the evidence and all reasonable inferences from that evidence in the light most favorable to the State, any rational trier of fact could have found the crime's essential elements beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

In *Stubsjoen*, the defendant argued that she could not be convicted of kidnapping by means of "secreting" when she took an acquaintance's six-month-old baby from an automobile after her acquaintance stepped away. Although the mother had no idea where Stubsjoen had taken her child, Stubsjoen argued that she had not secreted the infant because for most of the time she had the infant they were in public places and could easily be seen. 48 Wn. App. at 145. In rejecting Stubsjoen's argument, the court identified principles of construction that have equal application here: statutes should be construed to avoid strained, unreasonable or illogical results. *Id.* at 144. When language in the Washington Criminal Code, Title 9A RCW, is susceptible of differing constructions "'it shall be interpreted to further the general purposes stated in this title.'" *Id.* (quoting RCW 9A.04.020(2)). The provisions of the criminal code shall also be construed "'to forbid and prevent conduct that inflicts or threatens substantial harm to individual or public interests.'" *Id.* (quoting RCW 9A.04.020(1)).

Applying those principles, the *Stubsjoen* court held that "a reasonable interpretation of the current kidnap statute, which is consistent with its purpose, is that a child is abducted when held in areas or under circumstances where it is unlikely those persons directly affected by the victim's disappearance will find the child." *Id*. at 145. In context, "find the child" clearly means find and retrieve the child. The affected people in *Stubsjoen* were the child's parents, legal guardian or custodian, and law enforcement officers. *Id.*

9

Applying the reasoning of *Stubsjoen*, Ms. Forney was not an affected person able to find and retrieve L.L. By threatening Ms. Forney and making her too fearful to attempt to remove L.L. from the car, Mr. Seymour effectively restricted L.L.'s movements without consent or legal authority in a manner that interfered with his liberty. While L.L. was in the car with his mother, they were both restrained and unlikely to be found by those that could free them from their restraint. To support a conviction for kidnapping a child by use or threatened use of deadly force, it is enough that the force or threat of deadly force was directed toward the child's parent and guardian. *State v. Lopez*, 142 Wn. App. 341, 348, 174 P.3d 1216 (2007).

As in *Stubsjoen*, the defendant's narrow interpretation leads to a strained and absurd result. Reasonably reading the statute and statutory definitions, the evidence here was sufficient to sustain a conviction.

II.     THE SEPARATE CONVICTIONS FOR KIDNAPPING AND FELONY HARASSMENT OF MS. FORNEY DO NOT CONSTITUTE DOUBLE JEOPARDY, NOR DO THEY MERGE

Mr. Seymour's remaining argument is that his convictions for harassment and kidnapping Ms. Forney violate double jeopardy or should have merged, because without the threats used to prove harassment, he could not have been convicted of second degree kidnapping.

The federal and state double jeopardy clauses protect against multiple punishments for the same offense. U.S. CONST. amend. V; WASH. CONST. art. I, § 9; *State v. Gocken*,

127 Wn.2d 95, 100, 896 P.2d 1267 (1995). The component of double jeopardy raised by Mr. Seymour is the right not to be punished multiple times for the same offense. *See State v. Hancock*, No. 36978-1-III, slip op. at 1 (Wash. Ct. App. Apr. 8, 2021), https://www.courts.wa.gov/opinions/pdf/369781_pub.pdf.

The State has broad authority to extract multiple punishments for the same conduct, and double jeopardy provides no defense so long as multiple punishments are consistent with legislative intent. *Id.* at 3-4 (citing *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 980, 329 P.3d 78 (2014)). The question presented by a double jeopardy/multiple punishment challenge is therefore purely a matter of statutory interpretation. *Id*. at 4. It may be raised for the first time on appeal. *Id.*

The first step in determining what punishment the legislature has authorized is any expression of intent in the criminal statute. A paradigm is the express provision that a burglary shall be punished separately from other crimes committed during commission of the burglary. *State v. Freeman*, 153 Wn.2d 765, 772, 108 P.3d 753 (2005) (citing RCW 9A.52.050). The statutes at issue in Mr. Seymour's challenge are RCW 9A.40.030(1) (second degree kidnapping) and RCW 9A.46.020(1) (felony harassment). Neither authorizes multiple punishments.

If the legislative intent is not clear, the court may apply what Washington courts have called a "'same evidence'" or *Blockburger*[3] test as a rule of statutory construction. *State v. Calle*, 125 Wn.2d 769, 778, 888 P.2d 155 (1995); *Freeman*, 153 Wn.2d at 772. Under the test, "If each crime contains an element that the other does not, [courts] presume that the crimes are not the same offense for double jeopardy purposes." *Id.* In applying the test, courts do not compare the statutory elements of each crime at their most abstract level; rather, "'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.'" *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 817, 100 P.3d 291 (2004) (emphasis omitted) (quoting *Blockburger*, 284 U.S. at 304). Accordingly, a generic term that acquires meaning only from the facts of the case must be given its factual definition in order to assess whether one crime requires proof of a fact not required to prove the other. *Id.* at 818.

The evidence required to prove an individual guilty of kidnapping in the second degree is identified above. For harassment, RCW 9A.46.020(1)(a)(i), (b), provides in relevant part that "[a] person is guilty of harassment if: . . . [w]ithout lawful authority, the person knowingly threatens: (i) To cause bodily injury immediately or in the future to the

---

[3] *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

person threatened or to any other person; . . . [and] (b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out." The offense is increased from a gross misdemeanor to a felony if the harassment is committed "by threatening to kill the person threatened or any other person." RCW 9A.46.020(2)(b)(ii).

Here, while kidnapping may be committed by threatening to use deadly force, it may also be committed by secreting or holding the victim in a place where he or she is unlikely to be found. The State charged and proved both means of committing second degree kidnapping. To prove its case, the State was not required to prove Mr. Seymour threatened deadly force. Therefore, felony harassment, which requires a threat to kill, involves facts that do not necessarily have to be proved to establish kidnapping. Kidnapping requires proof of an abduction, or restraint on another person's movement, which does not have to be proved to establish felony harassment. The separate convictions do not violate double jeopardy.

For similar reasons, the convictions do not merge. Mr. Seymour argues they do, because unlawful imprisonment—on which the jury was instructed, as a lesser included crime of second degree kidnapping—is committed when a person knowingly restrains another person. RCW 9A.40.040(1). The crime is elevated to second degree kidnapping if the defendant threatens to kill the person.

13

But "'[t]he merger doctrine . . . only applies where the Legislature has clearly indicated that in order to prove a particular degree of crime (*e.g.*, first degree rape) the State *must prove* not only that a defendant committed that crime (*e.g.*, rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (*e.g.*, assault or kidnapping).'" *Freeman*, 153 Wn.2d at 777-78 (some emphasis added) (first alteration in original) (quoting *State v. Vladovic*, 99 Wn.2d 413, 420-21, 662 P.2d 853 (1983)). To elevate the crime of unlawful imprisonment to kidnapping, the State may rely on threats to kill, but it may also rely on secreting or hiding the victim, which was charged and proved in Mr. Seymour's case.

No error having been shown, the convictions are affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, A.C.J.

WE CONCUR:

_____          _____
Staab, J.                                    Fearing, J.

14