165 P.3d 1251 (2007)
STATE of Washington, Petitioner,
v.
Brian Keith LORD, Respondent.
No. 77472-2.
Supreme Court of Washington, En Banc.
Argued October 26, 2006.
Decided August 30, 2007.
*1253 Catherine E. Glinski, Attorney at Law, Manchester, WA, for Petitioner.
Randall Avery Sutton, Kitsap Co. Prosecutor's Office, Port Orchard, WA, for Respondent.
J.M. JOHNSON, J.
¶ 1 The right to a fair trial by an impartial jury is a foundation of our criminal justice system. Today we must decide whether the courtroom presence of lapel buttons, showing a picture of the victim, deprived the defendant of this fundamental right. We conclude, as did the courts below, there was no inherent prejudice and affirm the conviction.
¶ 2 Our constitution also guarantees that a trial will be public, allowing the attendance of spectators who have an interest in the trial. Courts must presume that the jurors we entrust with determining guilt both understand, and have the fortitude to withstand, the potential influence from spectators who show sympathy or affiliation. An underlying presumption is that jurors are intelligent and responsible individuals. A similar assumption about voters,[1] from which jurors are chosen, underlies our democracy. As further protection, jury panels are instructed and solemnly charged by the court with the duty to avoid bias or prejudice.[2] A simple picture *1254 button, a sign of support or sympathy that does not expressly advocate guilt or innocence, does not alone impermissibly bias a jury.
¶ 3 In determining whether a jury has been unduly influenced, there is an important distinction between the potential impact of a "state-sponsored" message and a message from private citizens.[3] The special influence of the imprimatur of the State is often troubling, while private acts are more likely understood as private expressions.
¶ 4 We hold that spectator signs of affiliation  here through buttons showing a victim's picture  do not automatically present "`an unacceptable risk . . . of impermissible factors coming into play.'" Holbrook v. Flynn, 475 U.S. 560, 570, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986) (quoting Estelle v. Williams, 425 U.S. 501, 505, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) (inherent prejudice requires an unacceptable risk of impermissible factors)). Here, Lord was not denied a fair trial or the constitutionally guaranteed presumption of innocence. We also hold dog handler evidence was not impermissibly denied in the trial and uphold Lord's conviction.[4]

FACTS AND PROCEDURAL HISTORY[5]
¶ 5 Brian Keith Lord seeks review of the Court of Appeals decision affirming an aggravated first degree murder conviction. Lord asserts his right to a fair trial was violated because several trial spectators were allowed to wear buttons depicting a picture of the victim for three days of his month long trial. Lord also contends that the trial court erred by excluding potentially exculpatory dog handler evidence that might indicate the victim was abducted from a nearby road rather than the crime scene.[6] A closely related contention is that the State should have further investigated this handler (who had searched for the victim when she first disappeared).
¶ 6 Lord was convicted for the first degree murder of Tracy Parker and sentenced to death on August 18, 1987. On appeal, this court affirmed the conviction and sentence. State v. Lord, 117 Wash.2d 829, 822 P.2d 177 (1991). On habeas review, the Ninth Circuit Court of Appeals reversed Lord's conviction on the grounds his trial counsel failed to present three witnesses who would have testified they thought they saw the victim alive after Lord was supposed to have killed her. Lord v. Wood, 184 F.3d 1083 (9th Cir.1999).
¶ 17 The case was remanded to the Kitsap County Superior Court, and this second trial included the testimony from the disputed three witnesses, as well as some additional deoxyribonucleic acid (DNA) analysis of blood and other evidence. The jury found Lord guilty, and the court sentenced Lord to life imprisonment without the possibility of parole. The Washington Court of Appeals affirmed. State v. Lord, 128 Wash.App. 216, 114 P.3d 1241 (2005). Lord then appealed to this court.
¶ 8 The State's basic theory of the crime remained the same. On September 16, 1986, *1255 Ms. Parker went to the residence of Wayne and Sharon Frye for her usual horse ride. Lord abducted Ms. Parker and took her to his brother's nearby residence where Lord had a workshop. He raped and killed Ms. Parker in the workshop and then drove to Clear Creek Road to deposit the body. He then returned to his brother's home.
¶ 9 In addition to evidence from the first trial, the State introduced newly available DNA analysis at the second trial. Since the initial investigation in 1986, forensic technology had progressed significantly and several different laboratories were able to test the blood and hair samples from the crime.[7]
¶ 10 In the new trial, the State experts applied more advanced DNA technology to the original evidence further implicating Lord. Mitotyping Technologies tested a hair from the bath towel found at Island Lake for mitochondrial DNA. The results matched Lord, excluding 99.94 percent of the population. LabCorp also tested a hair from the orange U-Haul blanket found near Ms. Parker's clothes, and the DNA matched Lord, excluding 99.94 percent of the population. Finally, LabCorp tested a blood splatter found in Lord's workshop where the victim was allegedly killed. The test produced a complete DNA genetic profile consistent with Ms. Parker's blood and excluded Lord as the source.
¶ 11 During the first three days of the trial, many of the spectators wore buttons with a picture of the victim. The effect on the jury of these buttons is central to our first issue today. The buttons were approximately two and one-half inches in diameter and bore an in-life photograph of victim Tracy Parker. They were picture buttons only and had no message or writing of any kind. Defense counsel objected and moved the judge to remove the buttons from the courtroom. The trial court denied the motion, allowing the buttons to remain for the first three days of trial. Lord did not move for mistrial nor later request a curative jury instruction.
¶ 12 On the third day, the trial court noted on the record that the jury could see the buttons worn by spectators in the courtroom and expressed concern that the buttons might invoke undue sympathy from the jury. On the morning of the fourth day, the court excluded the buttons from the courtroom for the remainder of the 31 day trial.
¶ 13 As a separate issue, Lord argued that the State failed to disclose police notes of a call from a dog handler who had attempted to locate the victim shortly after her disappearance. Before Lord's first trial, the State did disclose to the defense a police report indicating that the victim's family had engaged a handler and bloodhounds to search for Ms. Parker. While preparing for the second trial, defense investigators inquired and were told by the dog handler, Mr. Anderson, that his dog had tracked Tracy Parker's scent from the Frye barn through the woods and out to the road. Anderson also said a woman in a motor home had told him that she saw someone who looked like Ms. Parker get into a black car. The handler had called a detective at the Kitsap County Sheriff's department to report his dog track efforts.[8]
¶ 14 Both the trial and appellate courts ruled that the State's disclosure of the handler's existence was sufficient, holding that the State divulged all of the information it possessed and did not suppress any material evidence. Lord argued that the dog handler's testimony would rebut the State's theory that Lord abducted Ms. Parker from the stable. Although Ms. Parker had used the pathways near the stable many times before her death, the handler later told defense investigators his dog followed the freshest scent. However, the handler also stated that his dogs had the ability to follow a scent up *1256 to two weeks old. The trial court held that this evidence was not relevant because it did not alter the State's theory of the crime.
¶ 15 We granted review on both the picture button and dog track issues.

STANDARD OF REVIEW
¶ 16 We review each issue separately. First, whether the trial court erred when it allowed spectators to wear picture buttons for three days of the trial. Second, whether the trial court erroneously excluded testimony of the private dog handler. The standard for both determinations is whether the court abused its discretion. A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. Mayer v. Sto Indus., Inc., 156 Wash.2d 677, 684, 132 P.3d 115 (2006). An abuse of discretion is found if the trial court relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law. Id. The underlying questions of law we review de novo. Id.

ANALYSIS
¶ 17 The first issue is whether Lord received a constitutionally fair trial where several spectators wore button pictures of the victim during the first three days of a 31 day trial. The second question is whether the trial court abused its discretion when it excluded the dog track evidence. We affirm the trial and appellate court decisions on both issues, holding the trial court did not abuse its discretion, and Lord received a constitutionally fair trial.
A. Buttons Worn by Trial Spectators
¶ 18 It is beyond dispute that "[t]he constitutional safeguards relating to the integrity of the criminal process . . . embrace the fundamental conception of a fair trial, and . . . exclude influence or domination by either a hostile or friendly mob." Cox v. Louisiana, 379 U.S. 559, 562, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965) (citation omitted). However, a silent showing of sympathy or affiliation in a courtroom, without more, is not inherently prejudicial. The trial court did not abuse its discretion when it allowed the presence of spectator buttons for a portion of the trial. See Flynn, 475 U.S. at 570, 106 S.Ct. 1340 (inherent prejudice requires an unacceptable risk of impermissible factors). We affirm the Court of Appeals decision in this case and thereby reaffirm our recent and controlling Washington precedent, In re Pers. Restraint of Woods, 154 Wash.2d 400, 416, 114 P.3d 607 (2005). Additionally, United States Supreme Court precedent is consistent with our conclusion and confirms that this issue is appropriate for state court resolution.[9]
1. United States Supreme Court and Federal Circuit Court Cases
¶ 19 The United States Supreme Court has analyzed two cases with different facts that are relevant to our constitutional analysis. In Williams, 425 U.S. at 530, 96 S.Ct. 1691, the State forced a defendant to wear an orange prison jumpsuit in front of the jury. The court held this action was "inherently prejudicial" and denied defendant due process. A contrasting opinion, Holbrook v. Flynn, held that the courtroom presence of four uniformed and armed state troopers, who sat directly behind the defendants for the duration of the trial, did not deny defendants due process. 475 U.S. at 571, 106 S.Ct. 1340. These two cases can be used as bookends to demonstrate the range of impermissible and permissible courtroom behavior. Note that both cases involved direct action by the state, unlike the private spectator buttons at issue in the instant case.
¶ 20 When courtroom conduct is challenged as inherently prejudicial to the defendant, we must determine whether "`an unacceptable risk is presented of impermissible factors coming into play'" to affect the jury. Flynn, 475 U.S. at 570, 106 S.Ct. 1340 (quoting Williams, 425 U.S. at 505, 96 S.Ct. 1691). A reviewing court must consider the *1257 courtroom scene presented to the jury and determine whether it was "so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial." Flynn, 475 U.S. at 572, 106 S.Ct. 1340 (emphasis added). As the language indicates, some small risk of inherent prejudice is not automatically fatal as long as inherent prejudice does not pose an unacceptable threat to the outcome.[10]
¶ 21 In Flynn, the United States Supreme Court held that the presence of the uniformed and armed state troopers did not deny due process because of the "wider range of inferences that a juror might reasonably draw from the officers' presence." Id. at 569, 106 S.Ct. 1340. Here, picture buttons worn by the spectators more closely resembles the circumstances in Flynn than those in Williams. The natural reaction of grieving for a family member or friend is one of the "wider range" of inferences that can be derived reasonably from a picture button in the spectator gallery. Id. Many immediate analogues come to mind; the common tradition of wearing black clothing or armband to mourn resonates as the most obvious. The jury would understand this as a sign of loss, but not automatically find it inherently prejudicial or as urging conviction of defendant.
¶ 22 Another important distinction in this case is the difference between the prejudicial effect of State or litigant behavior versus restrictions necessary on private spectator behavior.[11] Our courtrooms are constitutionally required to be open to the public, thereby eschewing a tightly controlled, sterile trial environment in favor of open public access. See WASH. CONST. art. I, § 22; U.S. CONST. amend. VI.
¶ 23 United States Supreme Court cases have considered various state actions, such as requiring a defendant to appear in court wearing shackles or prison clothes or positioning armed and uniformed state troopers in the courtroom.[12] The Court has never held or even suggested it is a constitutional violation to allow picture buttons to be worn in the courtroom by private citizens. The Court has instead expressly allowed state appellate courts to determine and follow their own constitutional precedent regarding spectator buttons. See Carey v. Musladin, ___ U.S. ___, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006). We do so today.
¶ 24 Lord claims that the mere presence of picture buttons in the courtroom denied him a fair trial. He does not argue, nor does the record support, that he suffered actual prejudice. Instead, he asserts that the buttons were an "inherently prejudicial factor." See Reply Br. of Appellant at 9. Lord based his argument on Ninth Circuit Court of Appeals cases that are neither controlling nor persuasive. The Washington State Supreme Court has the same duty and authority as a federal circuit court to apply the United States Constitution and United States Supreme Court opinions in criminal matters. U.S. CONST. *1258 art. VI, § 2; see also 28 U.S.C. § 2254(d)(1).[13]
¶ 25 Lord first cites Norris v. Risley, 918 F.2d 828, 830 (9th Cir.1990), overruled in part by Musladin, ___ U.S. ___, 127 S.Ct. 649, 166 L.Ed.2d 482, where spectators wore buttons with the phrase "Women against Rape" for the entire trial, sold refreshments outside the courtroom, and had contact with jurors in the elevator and restrooms. The actions of those spectators were held to be inherently prejudicial because the wording on the buttons implied the defendant was guilty. Id. at 830.
¶ 26 The circuit court opinion in Norris is otherwise distinguishable. Here, we do not have buttons with an overt message underlined with a bold red stroke. Instead, the photographs here had no words and portray an ambiguous message that would be reasonably understood as a show of sympathy and support for the victim's family. In-life photographs of the victim are not considered inherently prejudicial in Washington, and photos of victims are often admissible, discussed infra. The Lord buttons were removed by the trial judge after the third day of a 31 day trial. This is also in contrast with Norris where supporters wore the "Women Against Rape" buttons throughout the trial, inside and around the courtroom, including the elevator the jury used.
¶ 27 Lord also argued that Musladin v. LaMarque, 427 F.3d 647, 651 (9th Cir.2005) vacated sub nom. Carey v. Musladin, ___ U.S. ___, 127 S.Ct. 649, 166 L.Ed.2d 482 supported his claim. In Musladin, the Ninth Circuit Court of Appeals on a habeas corpus review had reversed a decision by California courts that allowed courtroom spectators to wear buttons bearing a photograph of the deceased. Id. at 648. Three members of the victim's family wore buttons similar to those worn in the instant case, throughout multiple days of the trial, and in plain view of the jury. Id.
¶ 28 The United States Supreme Court vacated the Ninth Circuit Court decision in Musladin. See ___ U.S. ___, 127 S.Ct. 649, 166 L.Ed.2d 482. The Court held that the California State Court of Appeals decision allowing spectator buttons was an appropriate interpretation of established law as determined by the United States Supreme Court and that a federal circuit court may not overturn such a state court decision. This ruling confirms that this court appropriately follows our own carefully considered jurisprudence. See, e.g., Woods, 154 Wash.2d 400, 114 P.3d 607.
¶ 29 It is separately notable that two Supreme Court justices writing in Musladin favorably cited this court's decision in Woods, and also cited the Washington Court of Appeals opinion below in State v. Lord, as reasonable state court applications of established constitutional precedent regarding spectator conduct. Musladin, 127 S.Ct. at 654; see also id. at 658 (Souter, J., concurring).
2. Washington Law
¶ 30 Washington law is clear on this matter. We have recently ruled that silent displays of affiliation by trial spectators, which do not explicitly advocate guilt or innocence, are permissible. Woods, 154 Wash.2d at 416, 114 P.3d 607. In Woods, the defendant complained of black and orange remembrance ribbons worn by spectators during a murder trial. Id. at 417. Woods objected to the presence of the ribbons. The trial judge allowed them, with the caveat that the judge could provide a jury instruction, if necessary, to mitigate any prejudicial effects. Id. In that case, we applied the Supreme Court's decision in Flynn as the controlling law and upheld the conviction. Id. at 416-18, 114 P.3d 607. We reaffirm this holding.
¶ 31 In Woods, we also found the ribbons were distinguishable from the printed buttons in Norris because the "ribbons did not contain any inscription. They were simply *1259 ribbons that the wearers indicated they wore in memory of the victims." Id. at 417, 114 P.3d 607.
¶ 32 The picture button in this case, like the ribbons in Woods, did not bear any message regarding guilt or innocence. Id. The facts before us are directly analogous to Woods. The holding in Woods was also informed by our exhaustive review of numerous states' treatment of trial spectators who silently signal their affiliation. Though not binding, this court did summarize many foreign cases that were consistent with our analysis:
Many courts have used the Holbrook [Flynn] standard and have found that no inherent prejudice exists so as to taint the defendant's right to fair trial from the wearing of buttons or other displays. See, e.g., Buckner v. State, 714 So.2d 384, 389 (Fla.1998) (spectators holding up victim's picture was not inherently prejudicial); Pachl v. Zenon, 145 Or.App. 350, 929 P.2d 1088, 1093 (1996) (spectators wearing buttons with inscription "Crime Victims United" was not prejudicial and counsel was not ineffective for failing to challenge the issue); State v. Braxton, 344 N.C. 702, 477 S.E.2d 172, 177 (1996) (spectators wearing badges with victim's picture on them was not prejudicial). In most cases involving violent crime, there is at least one grieving family present at the trial and the presence of such persons should not come as any surprise to the jury members. See, e.g., State v. Richey, 171 W.Va. 342, 298 S.E.2d 879, 889 (1982) ("We must assume that a jury has the fortitude to withstand this type of public scrutiny, and cannot presume irreparable harm to the defendant's right to a fair jury trial by the presence of spectators who may have some type of associational identity with the victim of the crime.").
Woods, 154 Wash.2d at 418, 114 P.3d 607.
¶ 33 Thus, this court has previously decided where picture buttons and ribbons fall along the spectrum of permissible courtroom behavior. Cf. Flynn, 475 U.S. at 571, 106 S.Ct. 1340. Using Woods as our guide, we reaffirm that there is no per se "inherent prejudice [to] the defendant's right to fair trial from the wearing of buttons or other displays." 154 Wash.2d at 418., 114 P.3d 607.
¶ 34 Moreover, this court has also held in other decisions that jury viewing of in-life photographs of the victim is not inherently prejudicial, especially in a case where the jury will see crime scene photographs of the victim. State v. Pirtle, 127 Wash.2d 628, 651-53, 904 P.2d 245 (1995); State v. Furman, 122 Wash.2d 440, 452, 858 P.2d 1092 (1993) ("`In-life' pictures are not inherently prejudicial, particularly where as here the jury has seen `after death' pictures of the victim's body." (footnote omitted) (quoting State v. Rice, 110 Wash.2d 577, 599-600, 757 P.2d 889 (1988), cert. denied, 491 U.S. 910, 109 S.Ct. 3200, 105 L.Ed.2d 707 (1989))). In the instant case, both crime scene and in-life photographs were admitted into evidence and seen by the jury. Because the buttons in controversy carried an in-life photograph of the victim, they were not inherently prejudicial. Therefore, there was no unconstitutional infringement of defendant's right to a fair trial.[14]
¶ 35 Finally, Lord did not make a motion for mistrial or for a curative jury instruction. Such inaction has been held to constitute waiver, unless manifest constitutional error is found. See State v. Hoffman, 116 Wash.2d 51, 93, 804 P.2d 577 (1991) ("Reversal is not required if the error could have been obviated by a curative instruction which the defense did not request."). Moreover, a mistrial would be appropriate only if an error or misconduct is so prejudicial that it could not be cured, and thus, the defendant did not receive a fair trial. State v. Hopson, 113 Wash.2d 273, 284-85, 778 P.2d 1014 (1989); see also State v. Weber, 99 Wash.2d 158, 165; 659 P.2d 1102 (1983) ("A mistrial should be granted only when `nothing the trial court could have said or done would have remedied the harm done to the defendant.' In other words, a mistrial should be granted only when the defendant has been so *1260 prejudiced that nothing short of a new trial can insure that defendant will be tried fairly.") (quoting State v. Gilcrist, 91 Wash.2d 603, 612, 590 P.2d 809 (1979) (quoting State v. Swenson, 62 Wash.2d 259, 280, 382 P.2d 614 (1963))). A defendant generally cannot decline to ask for a mistrial or jury instruction, gamble on the outcome, and when convicted, reassert the waived objection.
B. Dog Track Evidence
1. Did the State Properly Disclose the Dog Track Evidence?
¶ 36 Lord argues that we should dismiss the murder charge because the State failed to disclose allegedly exculpatory dog track evidence. We disagree. The prosecution has a duty to disclose all evidence in its possession that might be favorable to the defense. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This court has also recognized that "[t]o comport with due process, the prosecution has a duty to disclose material exculpatory evidence to the defense and a related duty to preserve such evidence for use by the defense." State v. Wittenbarger, 124 Wash.2d 467, 475, 880 P.2d 517 (1994). The duty to disclose includes anyone working on the State's behalf, including police. Kyles v. Whitley, 514 U.S. 419, 438, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).
¶ 37 Lord complains of the State's alleged failure to disclose more than the sheriff department's notes referring to the dog handler, which were provided before the first trial. See, e.g., Brady, 373 U.S. at 87, 83 S.Ct. 1194. Years later, before the second trial, the handler told defense investigators that his dog followed a trail of the victim from the stable to the nearby road. The handler also asserted that a woman in a motor home indicated that she had seen a girl who looked like the victim get into a car on the roadside. Br. of Appellant at 38.
¶ 38 However, the State did not receive and retain such extensive information. The police report only stated that the family had initiated a bloodhound track, which was performed by a private party. Verbatim Report of Proceedings (VRP) (Oct. 2, 2002) at 54. There is a reasonable explanation for the attenuated nature of the police report. At the time of the tracking, Ms. Parker was not yet formally considered "missing" by police. There was no evidence of foul play, no file number yet established for search information, and the matter was still being handled as a common runaway investigation. See 5 VRP (Feb. 25, 2003) at 588. Lord contends the State should have inquired about additional details, and then preserved the potentially exculpatory evidence.
¶ 39 This argument fails. The original disclosure of the police report was sufficient, especially since the existence of the handler was noted (Mr. Anderson was not identified by name and address, but his employment made his identification a simple matter, which was easily accomplished by the defense years later). See VRP (Oct. 2, 2002) at 46-47. Additionally, the disclosure satisfies the State's duty because the evidence was not per se exculpatory. See Arizona v. Youngblood, 488 U.S. 51, 57-58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) (when evidence is only potentially exculpatory, the defendant must show either prejudice or bad faith by law enforcement officials).
¶ 40 This information was only potentially exculpatory because it did not change the State's basic theory of the crime: Lord abducted Ms. Parker, either from the stable or from the road, before he transported her to the workshop where he raped and killed her. Suppl. Br. of Resp't at 16. The point of abduction was only incidental.
¶ 41 Lord has shown neither bad faith by the State nor prejudice. There is no Brady violation in the instant case because the State disclosed all of the information it had, namely a report showing the dog track was done. The handler's other opinions, e.g., that the dog usually followed the most recent scent, were not in the State's possession and did not prejudice the outcome of the proceeding. In re Pers. Restraint of Benn, 134 Wash.2d 868, 916, 952 P.2d 116 (1998) ("the `question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of *1261 confidence'" (quoting Kyles, 514 U.S. at 434, 115 S.Ct. 1555)).
¶ 42 Additionally, the defense team could have uncovered the full story of the dog handler through a diligent investigation. Evidence that could have been discovered but for lack of due diligence is not a Brady violation. See Benn, 134 Wash.2d at 917, 952 P.2d 116 (the court found no violation because the defense had been given a summary of the statement and counsel could have obtained further information through due diligence). The defense always knew that a private handler had searched for the missing girl with a bloodhound in 1986 but failed to investigate until 2002. VRP (Oct. 2, 2002) at 48-50.
¶ 43 The defense now attempts to place the burden of further investigation on the State, arguing that a roadside witness who allegedly spoke to the handler is now impossible to find. Every trial attorney must make difficult decisions regarding the allocation of resources. The first defense counsel did so in choosing other defenses, which were more likely to succeed than further investigation of the handler or a search for a roadside witness. Merely asserting that the State withheld information does not make it so. Here, the defense does not establish that the State withheld any exculpatory evidence or committed a Brady violation.
2. Did the Trial Court Properly Exclude the Dog Track Testimony?
¶ 44 Lord also claims that the trial court's exclusion of the dog handler denied his constitutional right to offer testimony of witnesses in his defense. State v. Maupin, 128 Wash.2d 918, 924, 913 P.2d 808 (1996) (recognizing both state and federal constitutional rights to present witnesses). However, the right to present defense witnesses is not absolute. A criminal defendant has no constitutional right to have irrelevant evidence admitted. State v. Hudlow, 99 Wash.2d 1, 15, 659 P.2d 514 (1983). The rules of evidence define relevancy as the tendency to make a material fact more or less probable. ER 401. A trial court's decision to exclude evidence will be reversed only where the trial court has abused its discretion. State v. Picard, 90 Wash.App. 890, 899, 954 P.2d 336, review denied, 136 Wash.2d 1021, 969 P.2d 1065 (1998) ("The determination of whether testimony is admissible rests within the sound discretion of the trial court.").
¶ 45 The trial court excluded the dog handler's testimony based on the court's determination of the relevance or irrelevance of the handler's evidence, not his failure to qualify as an expert or the lack of scientific acceptance of scent tracking. See ER 702.[15]
¶ 46 The dog handler could not narrow the date of the scent trail followed by his dogs beyond a two week window. Thus, the victim could have made the scent trail during her frequent visits to the stable at any time within the preceding 14 days. Ms. Parker had been to the stable and road many times during that period, and the dog handler could not definitively testify that the track his dog followed was made on the day that Ms. Parker disappeared. Br. of Resp't at 16. The court determined the testimony would not prove any material fact because of the uncertain date of the scent.
¶ 47 The trial court was well within its discretion to refuse evidence it found irrelevant. See State v. Stubsjoen, 48 Wash. App. 139, 147, 738 P.2d 306 (1987); see also ER 401. Appellate courts cannot substitute their own reasoning for the trial court's reasoning, absent an abuse of discretion. Stubsjoen, 48 Wash.App. at 147, 738 P.2d 306. Consequently, if the dog handler had been able to determine that the scent track was from the date of the crime, such evidence might have been admissible and relevant.[16] *1262 However, the handler made no such claim, instead offering a two week timeline that did not change the State's basic crime theory.
¶ 48 We also note that while there was no error in the trial court's decision, the evidence excluded would easily meet the harmless error standard. To determine whether error is harmless, Washington uses "the `overwhelming untainted evidence' test." State v. Smith, 148 Wash.2d 122, 139, 59 P.3d 74 (2002) (citing State v. Guloy, 104 Wash.2d 412, 426, 705 P.2d 1182 (1985)).[17] Under this test, if the untainted, admitted evidence is so overwhelming as to necessarily lead to a finding of guilt, the error is harmless. Id. The State contends that even if this court finds that the track evidence was relevant; its exclusion amounted to harmless error when reviewed in context. See State v. Bourgeois, 133 Wash.2d 389, 403, 945 P.2d 1120 (1997) (error is not prejudicial if the evidence is of minor significance when compared to the overall weight of the evidence).
¶ 49 This exclusion of the dog track evidence is distinguishable from the three eye witnesses whose testimony was excluded in the first trial. See Lord, 184 F.3d 1083. In that case, the Ninth Circuit Court of Appeals found inadequate the first trial counsel's decision to omit presentation of three witnesses.[18]Id. at 1096. That court held that the omission constituted inadequate performance by trial counsel because the testimony could have raised reasonable doubt. Id. at 1095.
¶ 50 Here, the omitted eye witness testimony was admitted in the second trial, as well as much additional DNA analysis evidence. DNA evidence proved the victim's blood was found at Lord's workshop. Two different hair DNA analyses placed Lord near different parts of the crime scene each with a 99.94 percent probability. The second trial cured the defects that the Ninth Circuit found in Lord, 184 F.3d 1083, and added the DNA evidence. This jury based their verdict on a comprehensive review of all the evidence and voted to convict Lord. Any evidentiary rulings were harmless given the weight of the overall evidence.

CONCLUSION
¶ 51 We cannot guarantee a perfect trial, but we shall always endeavor to assure a fair and constitutional proceeding.[19]See Musladin, 127 S.Ct. at 658 (Souter, J., concurring) (citing the reasonableness of Lord, 128 Wash. App. at 219-23, 114 P.3d 1241 "I am wary of assuming that every trial and reviewing judge in those cases was unreasonable as well as mistaken in failing to embrace a no-risk standard. . . ."). On review, complaints regarding courtroom conduct under the supervision of trial courts require reversal only when a court is presented with an unacceptable risk. The requisite unacceptable risk of inherent prejudice to reverse requires more than the mere presence of photo buttons worn by grieving family members and spectators.
¶ 52 Finally, the State did not have a duty to further investigate the dog handler since the defense was earlier given a report showing that the tracking had been performed. Likewise, the trial court ruling that the dog handler's testimony was irrelevant survives abuse of discretion review. After the full and fair second trial, these remaining complaints by Lord involve, at most, only harmless *1263 error due to the overwhelming evidence presented to the jury. We affirm the trial and appellate courts and Mr. Lord's conviction.
WE CONCUR: GERRY L. ALEXANDER, C.J., CHARLES W. JOHNSON, SUSAN OWENS, MARY E. FAIRHURST, BOBBE J. BRIDGE, JJ.
MADSEN, J. (concurring in majority).
¶ 53 Although I substantially agree with the majority, I agree with the dissent that exclusion of the dog handler's testimony was error. However, since that evidence was of marginal relevance, I agree with the majority that the error was harmless.
SANDERS, J. (dissenting).
¶ 54 The majority holds a trial judge properly excluded defense evidence that directly contradicts the State's theory of the crime but continues that even if such was error, the error was harmless. I disagree. Brian Lord was convicted of murdering Tracy Parker. The State's theory is Parker asked Lord for a ride home from a stable before Lord killed her. But the trial judge excluded testimony from a dog handler that the handler's bloodhound traced Parker's freshest scent-track from the stable, through the woods, and to a road. A judge has no discretion to exclude evidence clearly relevant to a defense, and because the dog handler's testimony would have directly contradicted the State's theory, this error cannot be harmless.
¶ 55 A criminal defendant has a constitutional right to present a defense consisting of relevant, admissible evidence. Taylor v. Illinois, 484 U.S. 400, 408, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense . . . [T]his right is an essential attribute of the adversary system itself."). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. "The threshold to admit relevant evidence is very low. Even minimally relevant evidence is admissible." State v. Darden, 145 Wash.2d 612, 621, 41 P.3d 1189 (2002). And relevant evidence need provide only "a piece of the puzzle." Bell v. State, 147 Wash.2d 166, 182, 52 P.3d 503 (2002).
¶ 56 The trial court erred when it excluded the dog handler's testimony. The dog handler testified that his dog had tracked Parker from the stable, through the woods, and to a road, and a witness whose motor home was parked on the roadside told the handler that she thought she had seen Parker get into a vehicle stopped along the road. The dog handler testified there was no question that his bloodhound had picked up the "freshest scent available." 5 Verbatim Report of Proceedings (Feb. 25, 2003) at 608-09. But the trial court refused to admit the handler's testimony claiming it was irrelevant.
¶ 57 Notwithstanding, this testimony was highly relevant because it weakened the State's theory that Lord picked up Parker at the stable. Relevant evidence must be admitted unless it is precluded "by constitutional requirements or as otherwise provided by statute, by these rules, or by other rules or regulations applicable in the courts of this state." ER 402.[1] There is no suggestion any such exception applies here.[2]
¶ 58 The majority claims even if the dog handler's testimony was improperly excluded, the error was harmless. But "[t]he right to a fair trial is a fundamental liberty," Estelle v. Williams, 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), and "courts must carefully guard against dilution of the principle that guilt is to be established by *1264 probative evidence and beyond a reasonable doubt." Id. See also Taylor, 484 U.S. at 408, 108 S.Ct. 646. An error is not harmless unless it is an "error which is trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case." State v. Britton, 27 Wash.2d 336, 341, 178 P.2d 341 (1947). Therefore, an error is harmless if it does not affect the evidence properly before the jury.
¶ 59 We cannot excuse an error resulting in the exclusion of relevant evidence. "[I]t is impossible for courts to contemplate the probabilities any evidence may have upon the minds of the jurors." State v. Robinson, 24 Wash.2d 909, 917, 167 P.2d 986 (1946). The assumption a court "can determine what evidence or instruction influenced the jury's decision" is "a tacit admission that an appellate court is necessarily engaging in fact-finding." Dennis J. Sweeney, An Analysis of Harmless Error in Washington: A Principled Process, 31 GONZ. L.REV. 277, 279 (1995-96). And we "have no right to trench upon the province of the jury upon questions of fact." Jensen v. Shaw Show Case Co., 76 Wash. 419, 421, 136 P. 698 (1913).
¶ 60 As the Ninth Circuit Court of Appeals observed, the State's circumstantial case against Lord was not "ironclad." Lord v. Wood, 184 F.3d 1083, 1088 (9th Cir.1999). No witness had seen Parker together with Lord on the day of the murder, and the State could not pinpoint the exact time of death. Id. If a case is largely based on circumstantial evidence, then error is less likely to be harmless. See, e.g., State v. Coles, 28 Wash. App. 563, 625 P.2d 713 (1981) (admission of evidence of inculpatory statements made after Miranda warnings[3] not harmless because the State's case consisted solely of circumstantial evidence). Under harmless error analysis, we presume an error is prejudicial. Nothing here overcomes that presumption. See State v. DeRyke, 149 Wash.2d 906, 912-13, 73 P.3d 1000 (2003). The dog handler's testimony was relevant and should have been admitted. And because the trial court's improper ruling affected the evidence presented to the jury, the error cannot be harmless.
¶ 61 I dissent.
I CONCUR: TOM CHAMBERS, J.
CHAMBERS, J. (concurring in part/dissenting in part).
¶ 62 I join Justice Sanders in dissent. But while I concur with the majority's resolution of the jury taint issue, I write separately to set forth my reasons.
¶ 63 A trial is not a sporting event where fans wave signs, logos, and photographs declaring their allegiance for one team or another. I would hold that when a court effectively permits spectators to participate in a trial, prejudice will be presumed. Because I find the thought of courtroom spectators wearing buttons communicating their views on a central issue before the court abhorrent to a fair and impartial trial, I cannot join the majority.
¶ 64 Courts have a constitutional obligation to ensure a fair and impartial trial. Spectators help ensure that courts are fulfilling their constitutional role by being the eyes and ears of the public, watching justice be done. The decision makers in our trials must be impartial. CONST. art. I, § 22. Constitutionally, spectators, especially those who support one side or another, may not participate in the trial. Cf. Patterson v. Colorado, 205 U.S. 454, 462, 27 S.Ct. 556, 51 L.Ed. 879 (1907) ("The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print."). When spectators become participants, fairness and impartiality are jeopardized and the constitutional promise of due process under law is undermined. Cf. CONST. art. I, §§ 3, 21, 22.
¶ 65 "Justice in all cases shall be administered openly. . . ." CONST. art I, § 10. This prevents secret trials, ensures that judges perform their constitutional role, and fosters public confidence in the administration of justice. Justice must be administered openly. *1265 Though in the courtroom, the right of the accused to a fair and impartial trial is paramount and the expressive right of spectators is subordinate. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 32-33, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). The constitutional role of the spectator is to be an observer and nothing more. Any effort on the part of the spectators to communicate with the jury should be scrupulously prevented by the judge.
¶ 66 Brian Lord was on trial for murder. For the first three days of his trial, many spectators, over Lord's objection, wore large buttons bearing photographs of the murder victim, Tracy Parker. The buttons carried no message other than the message implicit in the presence of the photograph. On the third day, the able trial judge must have begun having second thoughts about allowing the buttons. She knew by then that jurors could see the buttons and was rightly concerned that the buttons might evoke undue sympathy from the jury, compromising Lord's right to an impartial process. On the fourth day, the judge excluded the buttons from the courtroom.
¶ 67 We have found the wearing of black and orange remembrance ribbons by trial spectators permissible because the ribbons did not advocate a finding of guilt or innocence. In re Pers. Restraint of Woods, 154 Wash.2d 400, 416, 114 P.3d 607 (2005). But in Norris, spectators wore buttons with the phrase "Woman Against Rape," and the court rightly held the communications were inherently prejudicial.[1]Norris v. Risley, 918 F.2d 828, 830 (9th Cir.1990). The majority concludes that wearing buttons bearing Tracy Parker's picture is more like wearing black and orange ribbons than buttons saying, "Woman Against Rape." Certainly, wearing buttons condemning rape during a rape trial is more pointed but wearing the victim's image in a trial for the rape and murder of that victim is fairly pointed itself. Allowing either is to allow courtroom spectators to present a planned, organized effort to communicate with  and sway  the jury. In my view, signs, logos, and buttons with photographs have no place in a courtroom during a trial. Accord Carey v. Musladin, ___ U.S. ___, 127 S.Ct. 649, 656, 166 L.Ed.2d 482 (2006) (Stevens, J., concurring). As the Supreme Court said more than half a century ago, "[d]ue process requires that the accused receive a trial by an impartial jury free from outside influences." Sheppard v. Maxwell, 384 U.S. 333, 362, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). In my view, judges should not permit spectators to communicate to the jury in any overt, organized, and concerted fashion.[2]
¶ 68 However, law is often an exercise is balancing. While I would begin from the assumption that such buttons cause undue prejudice, I would allow the presumption to be rebutted. In this case, I am satisfied that the prejudice was constrained by the trial court's decision to order the buttons removed 4 days into a 31-day trial. Further, counsel made no motion for mistrial or request for a curative instruction. Since this appears to be a reasonable strategic decision, I cannot say the omissions rise to ineffective assistance of counsel. Thus, I concur with the *1266 majority insofar as it holds that Lord is not entitled to relief on this ground.
NOTES
[1] See RCW 2.36.055 ("The superior court at least annually shall cause a jury source list to be compiled from a list of all registered voters and a list of licensed drivers and indenticard holders residing in the county.").
[2] See 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 1.01, at 4, 5, 7 (2d ed. Supp.2005):

The only evidence you are to consider consists of testimony of witnesses and exhibits admitted into evidence.
. . . .
. . . You must not consider or discuss any evidence that I do not admit or that I tell you to disregard.
. . . .
. . . You must keep your mind free of outside influences so that your decision will be based entirely on the evidence presented during trial and on my instructions to you about the law
. . . .
As jurors, you are officers of this court. As such you must not let your emotions overcome your rational thought process. You must reach your decision based on the facts proved to you and on the law given to you, not on sympathy, prejudice, or personal preference.
(Emphasis added.)
[3] "[A]lthough the Court articulated the test for inherent prejudice that applies to state conduct in Williams and Flynn, we have never applied that test to spectators' conduct. Indeed, part of the legal test of Williams and Flynn  asking whether the practices furthered an essential state interest  suggests that those cases apply only to state-sponsored practices." Carey v. Musladin, ___ U.S. ___, ___ - ___, 127 S.Ct. 649, 653-54, 166 L.Ed.2d 482 (2006) (emphasis added).
[4] Our holding that such displays are not a per se indication of inherent prejudice does not undermine a trial court judge's authority to control the courtroom (subject to an abuse of discretion review). Determination of inherent or actual prejudice is the practical provenance of the trial court judge, who is in the best position to monitor the atmosphere of the courtroom. Shirts, buttons, and other behavior may create an overtly hostile atmosphere that could prejudice the jury or intimidate witnesses. Therefore, the trial court judge's examination of the circumstances surrounding the display must be given considerable weight.
[5] Trial proceedings occupy more than 30 volumes of transcripts. The following facts are summarized from the appellate court opinion. See State v. Lord, 128 Wash.App. 216, ¶¶ 6-7, 22-59, 62-80, 114 P.3d 1241 (2005); see also Suppl. Br. of Resp't & Br. of Appellant, fact section.
[6] The effort of the private dog handler to find the missing person  later victim  was disclosed to the defense before the first trial.
[7] During the initial investigation, a search group found the victim's jacket, red sweatshirt, jeans, underpants, and shoes near Island Lake. Nearby they discovered a bath towel like the towel used as a curtain in the Frye's garage, the last location where Ms. Parker was seen alive. Another search party found an orange U-Haul blanket near Ms. Parker's clothes. It appeared to have blood stains and was singed. Ms. Parker's body was ultimately found a short distance from the Island Lake site.
[8] Nothing in the record suggests that the State had any additional details about the dog track or the identity of the woman in the motor home.
[9] See Carey v. Musladin, ___ U.S. ___, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006), which dealt with a similar case, and reverses a Ninth Circuit Court of Appeals decision that held such buttons were prejudicial.
[10] Moreover, the Court's language implies that one must prove both inherent and actual prejudice. Holbrook v. Flynn, 475 U.S. 560, 572, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986) ("if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over" (emphasis added)).
[11] A distinction between state and litigating private actors is highlighted in the case Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). There, the Court unanimously held that a litigating party, a newspaper defendant in a libel action, could be restrained from publishing material about the plaintiffs and supporters that it obtained through court-ordered discovery. Id. Specifically, the Court said that "[a]lthough litigants do not `surrender their First Amendment rights at the courthouse door,' those rights may be subordinated to other interests that arise in this setting." Id. at 32, n. 18, 104 S.Ct. 2199 (citation omitted) (quoting In re Halkin, 194 U.S.App. D.C. 257, 268, 598 F.2d 176 (1979) (emphasis added)). The Court explicitly noted that "on several occasions [we have] approved restriction on the communications of trial participants where necessary to ensure a fair trial for a criminal defendant." Id. (emphasis added).
[12] See Illinois v. Allen, 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) ("Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold."); Flynn, 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525; Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).
[13] Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 18 U.S.C. § 1, limiting jurisdiction of federal courts to grant habeas relief, mandating that such relief shall not be available unless the State court decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).
[14] Our constitutional "Victims of crimes  Rights" amendment requires the court or jury to consider the victim during some proceedings. WASH. CONST. art. I, § 35. See State v. Gentry, 125 Wash.2d 570, 625-26, 888 P.2d 1105 (1995).
[15] Presumably, before testifying as an expert, the handler would still have been subject to ER 702:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
Whether the dog track could have survived this scrutiny is beyond the scope of our review.
[16] If the expert cannot express an opinion to a reasonable degree of probability, then his or her opinion does not make the material issue more or less likely. ER 401; see, e.g., State v. Huynh, 49 Wash.App. 192, 198, 742 P.2d 160 (1987) (such testimony amounts to speculation and speculation is inadmissible); cf. note 11, supra (questioning whether this dog handler's evidence could actually qualify under ER 702).
[17] The overwhelming untainted evidence test is the current standard for harmless error analysis. This standard is not without its critics or alternatives. See Dennis J. Sweeney, An Analysis of Harmless Error in Washington: A Principled Process, 31 GONZ. L.REV. 277 (1995/96). The same conclusion of harmless error is reached in this case under this alternative test.
[18] Eyewitness testimony from boys who thought they saw the victim walking down the highway days after Lord allegedly killed her.
[19] See State v. Silvers, 70 Wash.2d 430, 434, 423 P.2d 539 (1967) ("`Mistakes or errors of judgment do not establish the violation of a constitutional right.' The constitution guarantees a defendant a fair trial, not a perfect trial." (quoting State v. Mode, 57 Wash.2d 829, 833, 360 P.2d 159 (1961))).
[1] An oft-cited rule to exclude relevant evidence is ER 403, which provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
[2] The trial court claimed the testimony was irrelevant because the dog handler could not pinpoint the exact date of the scent. But the handler would have testified to the jury that his bloodhound was trained to follow the freshest possible scent. Whether the dog handler's testimony was persuasive is a matter for the jury. Clearly though, it is relevant.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[1] I recognize that after our oral argument, the United States Supreme Court denied habeas relief to a petitioner whose case bears a striking similarity to this one, notwithstanding Woods and Norris. See Carey v. Musladin, ___ U.S. ___, 127 S.Ct. 649, 654, 166 L.Ed.2d 482 (2006). In Carey, the United States Supreme Court denied habeas relief because the wearing of buttons with the victim's image did not violate "`clearly established Federal law, as determined by the Supreme Court of the United States,'" as required by the Antiterrorism and Effective Death Penalty Act of 1996 before a state court's ruling could be overruled. Carey, 127 S.Ct. at 652-53 (quoting 28 U.S.C. § 2254(d)(1)). Whether or not clearly established federal constitutional minimums have been violated, of course, does not answer whether our own state constitutional standards have been met. For those reasons, I also respectfully disagree with the majority's characterization of the holding in Carey. Cf. majority at 1257 n. 10, 1257-58.
[2] Signs, logos, buttons, and the like are forms of expression and communication. I agree that some spectator "communication" is inherent in the constitutional guaranty of a public trial and thus part of the constitutional landscape. Cf. Carey, 127 S.Ct. at 654. For example, the quiet presence of a person sharing traits with the defendant or the victim sitting behind the prosecutor or the defense attorney may play an acceptable, if subtle, role in a trial.