IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>    v.<br><br>ALBERT MILLER JR.,<br><br>               Appellant. | No. 86592-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DÍAZ, J. — A jury convicted Albert Miller Jr. of violating a domestic violence no contact order (DVNCO) and of felony harassment following an altercation with James LaPierre. Miller now argues that the trial court abused its discretion and violated his constitutional right to present a defense by refusing to admit the existence of a separate no contact order (NCO), which prohibited LaPierre from having contact with Miller following an earlier altercation. He also argues that his counsel rendered ineffective assistance by failing to renew a related objection. Disagreeing, we affirm.

I.     BACKGROUND

In November 2022, a superior court entered a DVNCO prohibiting Miller from having contact with LaPierre because he was the fiancé of Miller's ex-girlfriend's daughter and a member of her household. Later that month, a physical

altercation occurred between Miller and LaPierre at a grocery store, as a result of which the State charged Miller with violating the DVNCO, as well as felony harassment and assault in the fourth degree. It was not their first hostile interaction.

The month before, the men had fought at a restaurant after Miller insulted LaPierre's fiancée, prompting LaPierre to confront Miller. While LaPierre claimed Miller hit him first, other witnesses reported LaPierre threw the first punch. Thereafter, LaPierre was convicted of disorderly conduct, which was reduced from an original charge of assault in the fourth degree, and prohibited from having contact with Miller.[1]

Before trial in the instant case, the State first moved to exclude the fact that a NCO was entered against LaPierre, i.e., the "order itself." The State also moved to exclude the fact that LaPierre was convicted of disorderly conduct, e.g., as reflected in his criminal history. The State made clear that it was not seeking to exclude testimony related to "the incidents and what led to" the NCO and conviction, but only the legal documents memorializing the legal acts.

Though acknowledging the NCO was relevant, the court granted the State's first motion and excluded any reference to the NCO itself, finding under ER 403 that the undue prejudice of admitting the NCO outweighed its probative value, as it impermissibly augmented "the likelihood of confusing the jury." The court further

---

[1] Prior to the fight at the restaurant, the men also engaged in a heated verbal exchange outside a gas station in August 2022, but it was not a physical confrontation and no charges were filed.

2

made clear that it was not excluding testimony about the underlying and "related incidents and the history between these parties."

As to the State's second motion in limine, the court further ruled Miller could not reference the fact of LaPierre's conviction in his case in chief, but reserved ruling on whether it could be used for impeachment purposes, depending on how LaPierre testified.[2] Ultimately, Miller's counsel did not renew an objection to the State's second motion in limine or otherwise to try to impeach him with the conviction following LaPierre's testimony.

At trial, LaPierre and Miller testified to opposing versions about what occurred in the charged incident. LaPierre testified that, while working at the grocery store and cutting vegetables with a produce knife, Miller had approached him, threatened to kill him, and punched him in the face. In response, LaPierre stated he held up his hands and reacted in self-defense.

For his part, Miller testified he initially noticed LaPierre and walked away while mumbling something to himself, but walked past him again to meet his son at the back of the store. At this point, he claimed LaPierre said something to him and approached him while holding a knife in a threatening manner. He stated LaPierre then set the knife down and attacked him, and that he had responded in self-defense. Miller testified that he subsequently disengaged, but admitted that before leaving he had yelled, "I'd like to kill you" because he was upset LaPierre had wielded a knife toward him.

---

[2] Miller has made clear he is not challenging the merits of this ruling, only that his counsel ineffectively did not renew his objection.

3

A manager at the store and another grocery employee—who had both observed the men engaged in the physical confrontation—also testified. Neither of them witnessed the beginning of the fight, but they reported they saw Miller attacking LaPierre and perceived LaPierre to be defending himself.

The jury returned verdicts convicting Miller on all charges. The court vacated the assault conviction to avoid violating double jeopardy and sentenced him for violating the DVNCO and for felony harassment-threat to kill. Miller timely appeals.

## II.    ANALYSIS

### A.    Right to Present a Defense

Miller claims that, by excluding "testimony referencing the court order prohibiting LaPierre from contacting Miller," the court abused its discretion under ER 403 and deprived him of his right to present his defense.

When a trial court's evidentiary ruling is challenged and a defendant claims a violation of his Sixth Amendment right to present a defense, we apply a two-part test. *State v. Jennings*, 199 Wn.2d 53, 58, 502 P.3d 1255 (2022); U.S. CONST. amend VI. First, we analyze the lower court's ruling for an abuse of discretion, applying the evidentiary rule or evidentiary statute at issue. *Id.* at 58-59. Second, if we find *no* abuse of discretion, we then consider de novo whether the ruling violated the defendant's Sixth Amendment right to present a defense. *Id.*

A trial court abuses its discretion if its decision is contrary to law or based on an incorrect application of an evidentiary rule. *State v. Neal*, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001). It also abuses its discretion if no reasonable judge

4

would take the view it adopted. *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001). Stated differently, it abuses its discretion if "its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons." *State v. Lord*, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007).

For evidence to be admitted at trial, it must be relevant. ER 402. Evidence is relevant if it tends to prove or disprove the existence of a fact of consequence to the outcome of the case. *State v. Weaville*, 162 Wn. App. 801, 818, 256 P.3d 426 (2011). However, otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ER 403.

We conclude the court did not abuse its discretion by concluding the NCO prohibiting LaPierre from having contact with Miller posed a risk of confusing the jury that outweighed its probative value for two main reasons. First, there was no evidence at trial that Miller knew at the time of the fight that the NCO binding LaPierre was in place. Second, a reasonable judge could take the view it would confuse the jury to be presented with a second NCO, different from the DVNCO Miller was charged with violating, and from a distinct, separately charged incident.

On both points, our Supreme Court's decision in *Jennings* is instructive. There, the Court held that the trial court did not abuse its discretion by excluding a toxicology report, despite concluding that it had at least some minimal relevance to the defendant's self-defense claim. 199 Wn.2d at 62-63. Jennings offered the report to corroborate his claimed belief the victim had been under the influence of

meth (and thus dangerous) at the time of his charged crime. *Id.* at 62. The Court noted, however, that he had not put forth evidence that he actually knew what effect the drug had induced in the victim. *Id.* Therefore, the Court reasoned that "reasonable minds might differ" on whether it was speculative that the report supported Jennings' claimed belief and, in turn, held a reasonable judge could conclude it might confuse the jury. *Id.* at 62-63.

Similarly, here, Miller avers that the sheer fact of the NCO would have "bolstered" Miller's credibility that LaPierre was a threat to him and, thus, served to "corroborate" his self-defense claim. But unlike the DVNCO LaPierre and his fiancé had sought against Miller, there was no evidence that Miller had any role in the court's imposition of the NCO binding LaPierre. And, no evidence showed that Miller actually knew the NCO existed. Thus, a reasonable judge could conclude its admission posed a risk of permitting the jury to speculate, or confusing the jury, about the NCO's import in a way that substantially outweighed its probative value, namely, as the court found, by making the trial "overly complicated, creating . . . a mini-trial on" LaPierre's separate conviction.

In reply, Miller argues that it would be "reasonable [for this court] to infer" that Miller knew about the NCO imposed on LaPierre simply because he was the victim of the disorderly conduct. Not only is that response an implicit concession that there is no such explicit evidence in the record, but it does not address the claim that a reasonable person could conclude that it is unclear how the sheer fact of the NCO bolsters his self-defense claim, where Miller may not even have known about the NCO. Stated otherwise, a reasonable court could conclude that the fact

of the NCO held little probative value to establish he reasonably feared LaPierre, when Miller may or may not have known about the NCO. Thus, the court's conclusion that the admission of multiple NCOs could unnecessarily confuse the jury was not an abuse of discretion.

As to the alleged constitutional violation, while the right to present a defense to a criminal charge is constitutionally guaranteed, it is not "without limitation . . . "[a]nd 'the Constitution permits judges to exclude evidence that is'" excludable under ER 403. *State v. Orn*, 197 Wn.2d 343, 352, 482 P.3d 913 (2021) (internal quotation marks omitted) (quoting *Holmes v. South Carolina*, 547 U.S. 319, 326-27, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006)). Moreover, this court has held that "phrasing an evidentiary ruling as a constitutional claim [does not] provide[ ] a means for an end run around the Rules of Evidence. Nor is the second step analysis merely a repetition of the analysis undertaken at step one." *State v. Ritchie*, 24 Wn. App. 2d 618, 628-29, 520 P.3d 1105 (2022) (citation omitted). Our Supreme Court has characterized ER 403 as one of those "well-established, commonly utilized rule[s] that ha[ve] been applied time and again without any demonstrated detriment to the fairness of proceedings." *Id.* at 634-35.

We hold that the court did not violate Miller's constitutional right to present a defense because Miller was still able to present his theory of self-defense without the NCO. Critically, our Supreme Court has explained there is a "clear distinction" between "merely bolstering" a defense and "evidence that is necessary to present a defense." *Jennings*, 199 Wn.2d at 66-67. Even assuming the NCO could have *bolstered* his defense, as he claims, it was not crucial to his ability to present a

7

defense because he was still able to—and in fact did—explain his alleged fear of LaPierre through his own testimony and through cross-examination of LaPierre when recounting the details of the interaction. We hold no constitutional violation because, as in *Jennings*, even without the NCO, Miller "was still able to testify regarding his subjective fear and belief…which was his theory of the case." 199 Wn.2d at 67. Thus, this assignment of error fails.

B.     Ineffective Assistance of Counsel

Miller claims his counsel rendered ineffective assistance by failing to renew his opposition to the State's second motion in limine or otherwise impeach LaPierre with the fact of his conviction after LaPierre testified, even though LaPierre had "opened the door" the court kept ajar in its ruling. We disagree.

To succeed on an ineffective assistance of counsel claim, a defendant must make two showings: (1) that their counsel's representation was deficient, and (2) that the deficient representation prejudiced the defendant. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

As to the first prong, we apply a strong presumption of effective representation and a defendant must show that the representation "fell below an objective standard of reasonableness based on consideration of all the circumstances." *Id.* at 335. "Because the presumption runs in favor of effective representation, the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." *Id.* at 336. As to the second prong, if an appellant demonstrates deficient performance, to demonstrate prejudice, they must then show there is a reasonable probability

the result of the proceeding would have been different without counsel's errors. *Id.* at 337.

Here, we conclude that Miller cannot overcome the presumption of reasonable performance to meet the first prong.

Before trial, the court reserved ruling on whether the defense could impeach LaPierre with the fact of his conviction, explaining Miller could impeach Miller "if he somehow disavowed what took place previously," "if he denied the fact [of the conviction]," or "if he was asserting [the restaurant incident] was a one-way altercation . . . and not a two-way altercation."  Later in the hearing, the court similarly held that the fact of LaPierre's conviction "would be legitimate for impeachment" if he "tried to downplay his own involvement in" the incident, "suggested that it was one-sided," or "characterize[d] the incident differently."  In response, Miller's counsel said she could live "with using it for impeachment."  The State agreed that the fact of impeachment would be proper if LaPierre "denies that the incident occurred."  After some debate about where to draw that line, Miller's counsel stated, "We just [will] have to see how it plays."

At trial, although LaPierre stated he remembered getting hit by Miller and defending himself, LaPierre did acknowledge he had approached Miller in "elevated" anger, yelled at him, used profanity, and admitted to hitting him as well.

On this record, it was a possible legitimate tactical choice by defense counsel to decide she would not have succeeded in renewing his objection or attempting to impeach LaPierre with the sheer fact of the conviction.  After hearing LaPierre's testimony, Miller's counsel reasonably could have concluded that

LaPierre had not "disavowed" what took place previously, "denied the fact" of the conviction, asserted that it was merely a "one-way" and not two-way altercation, or had not "downplay[ed] his involvement" to the degree the court had contemplated when reserving ruling on impeachment. In turn, Miller's trial counsel could have reasonably concluded LaPierre did not open the door Miller claims he did.

Indeed, the trial court appears to have understood the testimony in this manner as well. Following a sidebar where Miller's counsel "was asking for clarification" on a related aspect of the rulings on the pretrial motions, the court suggested it did not think LaPierre had characterized the incidents differently, stating, "I believe he confirmed that there were two incidences between he and Mr. Miller prior to the grocery store incident which is the basis the charges here." That was the court's "understanding of how the evidence came in." It is, thus, reasonable for counsel to have concluded the court understood LaPierre confirmed his participation in the restaurant incident in a satisfactory manner and that a renewed objection would fail. Failure to object where that objection would not have been sustained is not ineffective assistance of counsel. *State v. Bell*, 26 Wn. App. 2d 821, 843, 529 P.3d 448 (2023).

Moreover, our Supreme Court has expressly held "defense counsel's decision not to object can be characterized as legitimate trial strategy or tactic[] [because] [c]ounsel may not have wanted to risk emphasizing the testimony with an objection." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004). In other words, as this court recognizes, "[c]ounsel engages in a legitimate trial tactic when forgoing an objection in circumstances when counsel wishes to

avoid highlighting certain evidence." *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (2019). Here, it could have been a legitimate strategic choice for counsel not to renew its objection to the State's second motion in limine excluding the fact of LaPierre's conviction, based not only upon the uncertainty that it would succeed, but also the desire not to draw the jury's focus to LaPierre's unfavorable characterization of Miller.

Therefore, Miller has not shown deficient performance as required to prevail in an ineffectiveness claim. *McFarland*, 127 Wn.2d at 334-35.[3]

### III. CONCLUSION

Finding no error, we affirm.

Díaz, J.

WE CONCUR:

_____

_____
Mann, J.

---

[3] Miller also filed a Statement of Additional Grounds for Review that makes two single-sentence assertions: "Speedy trial was took away from me[,]" and "I was denied the right to be at the DV hearing twice." We hold that there is no basis for relief, as we "will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors." RAP 10.10(c).